91 N.J. Super. 477 (1966)
221 A.2d 225
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH FOURNIER, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN SCHLATTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1966.
Decided June 17, 1966.
*478 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Thomas M. Maher (assigned counsel) argued the cause for appellant Joseph Fournier.
Mr. Thomas J. Callahan (assigned counsel) argued the cause for appellant John Schlatter.
*479 Mr. Carlos Peay, Jr., Assistant Prosecutor, argued the cause for respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The two defendants were convicted of robbing one Wittig at night behind the victim's home. They appeal on several grounds.
We cannot agree with the ground of appeal that the verdicts were against the weight of the evidence. Although there were some inconsistencies in the identifications of the defendants by Wittig, particularly when one compares his prior out-of-court identifications with his testimony in court, this was a matter for appraisal by the jury. There was other substantial corroborative evidence of guilt of both men.
As to the allowance of testimony of out-of-court identifications of defendants by Wittig, we do not accept the argument that the mere fact that defendants were identified singly while in the custody of the police and not from a lineup renders the identifications so unfair or unreliable as to come within the admonition in State v. Williams, 39 N.J. 471, 489 (1963). There was no error in this regard.
Both defendants complain of the failure of the trial court to charge or instruct the jury not to draw any inference unfavorable to the accused from the fact that a witness called by the State refused to answer questions put to him on the ground of self-incrimination. One Lillian Clark, a "girl friend" of defendant Schlatter, testified for the State that she heard Schlatter tell one Hagstrom the night of the crime that he had "held up someone and got checks and credit cards." Hagstrom was next called by the State, and, after answering a question as to where he lived, refused to answer the following questions on grounds of self-incrimination: (1) whether he knew the defendants; (2) whether he was questioned by the Garfield police; (3) whether he subsequently gave the police a statement; (4) whether he was asked questions which were taken down and transcribed; *480 (5) whether he had occasion to go to a Cities Service Rambler Company. At that point counsel for Schlatter objected on the ground that "* * * the Prosecutor should not try to prove things by getting no answer. The jury may believe that these things occurred." The court permitted one more question, pointing out that if the State had not called the witness it might have been vulnerable to a defense attack based on that fact (apparently in the light of Mrs. Clark's testimony). The witness then declined to answer a question whether he was familiar with an automobile registered in defendant Fournier's name (there had been evidence that a battery installed in Fournier's car was purchased with a credit card stolen from Wittig).
The court at that point shut off further interrogation upon satisfying itself the witness would answer no questions connected with the case. The court neither gave nor was requested by defense counsel to give any instructions to the jury not to draw any inferences against defendants from the witness's claim of constitutional privilege.
As a result of inquiry by the court at oral argument, counsel have submitted conflicting affidavits as to whether the prosecutor knew before putting Hagstrom on the stand that he intended not to testify on the basis of privilege. Under the circumstances we cannot assume that he had such knowledge. The prosecutor has submitted to the court a copy of a signed statement by the witness given the police prior to trial indicating knowledge of the crime and possible implication as an accessory after the fact and argues he was justified thereby in assuming Hagstrom would cooperate at trial.
A good annotation of the law concerning the prejudicial effect of the offering by the prosecution of a witness, apparently in complicity with a defendant, who refuses to testify on grounds of constitutional privilege, is contained in 86 A.L.R.2d 1443 et seq. (1962). The predominant view is that there may be prejudicial error in such a tactic and that reversal will ensue if the prosecutor knew in advance or had good reason to believe the witness would claim his privilege *481 against self-incrimination. Id., at pp. 1444-45. And see San Fratello v. United States, 340 F.2d 560 (5 Cir. 1965), where the court considered the circumstances so prejudicial as to warrant reversal despite a strong cautionary charge to the jury not to consider the claim of privilege as against the defendant; United States v. Tucker, 267 F.2d 212 (3 Cir. 1959); cf. United States v. 5 Cases, More or Less, etc., 179 F.2d 519 (2 Cir. 1950), cert. denied 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372 (1950); DeGesualdo v. People, 147 Colo. 426, 364 P.2d 374, 86 A.L.R.2d 1435 (Sup. Ct. 1961). In composite, the cases reveal that each such case is peculiarly dependent on its own set of facts, particularly with relation to the culpability of the prosecutor's tactical approach and as to the factor of actual prejudice.
We think that sound practice in such a situation as this calls for the prosecutor's making inquiry of the witness in advance as to whether he intends to testify and then informing the court and defense counsel of the result of the inquiry before adducing the proofs in open court. If the prosecutor, though having reason to believe the witness will plead his privilege, wishes to test his intent to do so by putting him on the stand and asking the questions, this should be done in the first instance out of the presence of the jury. Thus can needless prejudice be avoided. For a similar recommendation in a comparable situation, see State v. Guido, 40 N.J. 191, 200 (1963).
Under all the circumstances here manifested, particularly the absence of indication at the trial that the prosecutor knew or reasonably should have known Hagstrom would assert privilege and the failure of defendants to request the instructions whose absence they now complain of, we do not feel a reversal on this ground is here called for. Moreover, the arguably prejudicial sting of Hagstrom's plea of privilege is to considerable degree neutralized by the fact that the jury already had proof, through the testimony of Mrs. Clark, that Schlatter had admitted his guilt to Hagstrom.
*482 Defendant Fournier also claims error in the fact of joint trial with Schlatter. However, there was no motion for severance, and the court had cautioned the jury not to consider evidence of acts of one of the defendants as bearing upon the guilt of the other. There is no plain error. Nor do we find reversible error in other arguments of this defendant based on admission of an automobile battery into evidence by consent and the stipulation in relation thereto; and concerning the court's charge to the jury that the State was required to prove the presence of both defendants at the scene of the crime. As to the latter point, it is apparent when reading these remarks in context that the court was merely trying to protect the rights of both defendants in that neither could be convicted if not proven to have himself been present when the crime was committed.
Affirmed.