196 N.J. Super. 220 (1984)
482 A.2d 45
STATE OF NEW JERSEY, PLAINTIFF,
v.
PAUL CITO, DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided June 26, 1984.
*221 Lori La Mendola Spagnoli for plaintiff (Nicholas L. Bissell Jr., Prosecutor of Somerset County, attorney).
Paul Cito, defendant pro se.
*222 IMBRIANI, J.S.C.
May a defendant call before a jury a witness who states in advance that he will exercise his Fifth Amendment privilege and refuse to answer any questions? The State is precluded from doing so, but unexplained dicta in a footnote in State v. Jamison, 64 N.J. 363 (1974) states that:
[n]o similar policy considerations would seem to apply ... where the defense desires to call a witness who is expected to decline to testify, asserting his privilege. [at 374]
However, the Court specifically left the question open until presented with a case raising the issue.
The State argues that defendant's purpose in offering the witness is not to elicit evidence or to seek the truth, but is a patently transparent tactic designed to deceive the jury into inferring that the offense was probably committed by the witness and not defendant. Defendant, who also exercised his Fifth Amendment privilege not to testify, appeared pro se and not only was not subjected to cross-examination, but effectively presented his defense to the jury through his examination of witnesses and his opening statement and summation. He was provided with counsel from the public defender's office to sit at his side throughout the trial. See McKaskle v. Wiggins, ___ U.S. ___, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
A few weeks after a house burglary, police obtained a search warrant for defendant's house and seized stolen items in the basement and a stolen shotgun from defendant's bed. The State's case was circumstantial and was based predominantly on a screwdriver seized from defendant's living room which an FBI tool-marks identification expert testified was the precise tool used to break the lock on the back door of the burglarized home through which entrance was gained, footprints obtained from the snow outside the burglarized home which matched shoes seized from defendant's bedroom and the fact that stolen property was found at defendant's home shortly after the burglary.
*223 In his summation defendant conceded that stolen property was seized at his residence but strenuously insisted that they were brought there by a friend whose identity he refused to disclose and, in any event, that he was unaware they were previously stolen. He said the police insisted that he disclose the identity of his friend but his loyalty and friendship prohibited him from "squealing." He argued that it was the obligation of the police to apprehend persons who committed crimes and it was unfair to expect him to assist the police by turning on his friends. He obviously had no compunction against indirectly disclosing the identity of that same friend by attempting to call him during the trial as a witness.
The defendant called J.M. as his witness and at the request of the State a R. 8 hearing was conducted outside the presence of the jury. The witness was placed under oath and asked by defendant:
Q.... did you at any time after January 17, drop over some, a bag and a sawed-off shotgun and ask me to hold these for you?
(at this time the court interrupted the questioning and informed the witness of his constitutional rights)
THE COURT: ... Do you feel at this point that you have any questions or that you want an attorney, or anything?
MR. M.: Not at this point, no sir. If I do, I'll ask the Court.
THE COURT: You let me know, okay.
(whereupon the court reporter read back Mr. Cito's previous question)
A. I wish to assert the right to plead the Fifth Amendment.
THE COURT: You refuse to answer in that an answer may tend to incriminate you?
THE WITNESS: Yes, sir.
The defendant stated that he did not intend to ask the witness if he committed the burglary but did intend to question him about his extensive criminal record. The court sustained the State's objection to the witness being called and questioned before the jury. There are a number of cases that discuss this issue but none are precisely on point.
In State v. Fournier, 91 N.J. Super. 477 (App.Div. 1966) two defendants were charged with robbery and the State called a witness to whom one of the defendants allegedly admitted he *224 had committed the crime. After being sworn before the jury the witness refused to answer questions on the grounds of self-incrimination and the "Court neither gave nor was requested by defense counsel to give any instructions to the jury not to draw any inferences against defendants from the witness's claim of constitutional privilege." Id. at 480. The Appellate Division concluded that based upon the record there was an "absence of indication at the trial" that the prosecutor "knew or reasonably should have known" that the witness intended to assert his Fifth Amendment privileges. Id. at 481. Therefore, the conviction was affirmed, but a policy was adopted to be followed in the future.
We think that sound practice in such a situation as this calls for the prosecutor making inquiry of the witness in advance as to whether he intends to testify and then informing the court and defense counsel of the result of the inquiry before adducing the proofs in open court. If the prosecutor, though having reason to believe the witness will plead his privilege, wishes to test his intent to do so by putting him on the stand and asking the questions, this should be done in the first instance out of the presence of the jury. Thus, can needless prejudice be avoided. [Ibid.]
In State v. Cullen, 103 N.J. Super. 360 (App.Div. 1968) defense counsel at the beginning of the case informed the trial judge and prosecutor that a "state's witness or two will recant" and requested that the court invoke the procedure outlined in State v. Fournier, supra. Id. at 362. The court agreed. Nonetheless, for reasons not made clear in the opinion, when a witness was called by the State the Fournier procedure was not employed and the prosecutor was permitted to ask a series of questions which the witness refused to answer in the presence of the jury on the ground that to do so might incriminate him. Again, the Appellate Division stated that "[t]he record does not indicate that the prosecutor had specific knowledge that [the witness] intended to rely upon his Fifth Amendment privilege when... called ... as a witness." Id. at 364. However, it concluded that while the trial court did not commit prejudicial error initially by permitting the State to call the witness, once the witness exercised his Fifth Amendment privilege the court committed prejudicial error by permitting the *225 prosecutor to ask the witness a series of questions "which placed before the jury innuendo evidence or inferences of evidence which the State could not get before the jury by direct testimony of the witness." Id. at 365.
State v. Jennings, 126 N.J. Super. 70 (App.Div. 1972) involved a charge of manslaughter and the defense called one Figone as a witness. The trial judge, after being informed by the witness that he was told by his counsel to "testify to the truth," at 72, adjourned the case to require the attorney to appear in court to state on the record whether he fully understood the consequences of advising his client to waive his Fifth Amendment privilege and testify on behalf of defendant. The following morning the witness's attorney stated in court that "he was advising the witness not to testify on the grounds of self-incrimination." Id. at 73. The witness was present in court at the time and confirmed that he received such advice but he "was not asked whether he would himself invoke the privilege not to incriminate himself." Ibid.
The witness was then interrogated by defense counsel out of the presence of the jury and although the witness's attorney advised him not to answer, when the court directed the witness to answer, he did. When voir dire was completed the judge ruled that he would respect the attorney's objections and not compel the witness to testify since such testimony would tend to incriminate him "because the conflict between his grand jury testimony and the voir dire testimony, if repeated before the jury, would expose him to a charge of false swearing." Id. at 74. The conviction was reversed because the Fifth Amendment privilege was not properly invoked.
It is and long been fundamental that the privilege against self-incrimination is personal to the individual claimant, and the election to invoke it must be exercised by the witness himself on the stand and under oath, after hearing a question or questions addressed to him. It is not invocable by an attorney as his surrogate. [Id. at 75]
The Appellate Division held that the trial court was not justified in assuming that the witness would not testify simply because he was advised by his attorney not to do.

*226 [S]uch an inference is [not] a permissible substitute under the cases for testing the witness personal intentions on the stand under oath (or affirmation).... [Id. at 77]
Thus, the principle of these cases appears to be that if the State calls a witness who it knows in advance will exercise his Fifth Amendment privilege not to answer any questions, the witness must first be examined under oath out of the presence of the jury. And if he personally states that he will invoke the Fifth Amendment privilege and refuse to answer any questions, he may not be called before the jury.
But do the same principles and philosophy apply when the witness is offered by the defendant? If the purpose of the rule is to prevent a miscarriage of justice by interdicting the use before a jury of "innuendo evidence or inferences of evidence which [a party] could not get before the jury by direct testimony of the witness," State v. Cullen, supra, 103 N.J. Super. at 365, why not apply the same rule to the defendant? If the State cannot present a scenerio which may lead the jury to unfairly draw unfavorable inferences against a defendant, why should the defendant be allowed to present a scenerio which may unfairly lead the jury to draw unfavorable inferences in support of the defendant?
Jamison involved a witness who indicated that he would exercise his Fifth Amendment privilege and refuse to answer any questions. The court precluded the defendant from calling him as a witness before the jury and the conviction was reversed but it was because of two reasons not present here; first, the failure of the witness to personally invoke his Fifth Amendment privilege and, second, the mistaken exercise of discretion by the trial court to sua sponte assign counsel to the witness to advise him of his constitutional rights. Moreover, Jamison should be viewed in the light of the highly significant fact that the witness had previously given a sworn statement admitting "that he, not defendant, had done the knifing." 64 N.J. at 374. The witness patently had crucial information which was not disclosed to the jury. And when our policy supporting full disclosure to the jury clashes with the policy *227 supporting a privilege by a witness, we must balance them and determine which one should prevail. Jamison decided in favor of the former because "the policy of disclosure is more fundamental one, [and] the privilege is not to be viewed as absolute." Id. at 376. The court characterized the assignment of counsel under the circumstances of that case as "both premature and ill-advised" and stated that:
[T]he first concern of the court should have been the free flow of evidence for the enlightenment of the jury in the trial. [at 376]
As said in State v. De Cola, 33 N.J. 335 (1960):
[T]he need for justice to the litigants understandably tends to loom above the seemingly more remote value [of] the privilege of the witness. [at 345]
While it may be "ill-advised" for a court to assign counsel to a witness one can fairly assume that such comment does not suggest that the trial court should not inform a witness of his constitutional rights not to testify, as this court did.
Thus, what the Supreme Court appears to hold is that it would be error to deny a defendant the right to call before a jury a witness who asserts in advance his intention to exercise the Fifth Amendment if the trial court knows that the witness has evidence which could have some impact on the facts in issue or the innocence of the defendant. Jamison does not say, nor does it hold, that it is error to deny the defendant the right to call such witness before the jury when there is no evidence that the witness has any knowledge about the facts in issue or the innocence of the defendant.
Here there was no evidence that the witness had any knowledge or information which could bear on the facts in issue or the innocence of the defendant. He never gave a statement to the police or anyone else evidencing knowledge of any relevant facts. To allow a witness to be called before the jury under these circumstances to assert a Fifth Amendment privilege would simply constitute the sanctioning by the court of a distinctly disingenuous sham designed for no purpose other than to deceive the jury. Unlike Jamison, here there is not the slightest suggestion that any known evidence or testimony was denied the jury. The "free flow of evidence" was not impeded.
*228 Mindful of the paramount policy of the courts in favor of full disclosure this court did consider methods by which it could determine whether the witness had any relevant information. It was quickly apparent that there was no way to elicit his possible knowledge without compelling the witness to incriminate himself. For instance, the only way for him to disclose that he delivered stolen property to the defendant's house would be for him to admit that he possessed stolen property. The defendant could be questioned in camera but this procedure also presents problems. Assuming that the witness would agree to answer questions there, would it create in the mind of the defendant the fear that the court was in some way associated or in cahoots with the State? Would the defendant, who has the right to be present at all stages of the proceeding, see R. 3-16, be permitted to attend the hearing? And if so, why not the State? Obviously an in camera proceeding is not an answer.
Finally, the court considered invoking the provisions of the Immunity Statute, N.J.S.A. 2A:81-17.3, to compel the witness to testify. But here again there are problems. First, there are time constraints. Immunity cannot be granted quickly and should we delay the trial for several days while the possibility of its use is explored? Moreover, the statute could be invoked only by the Attorney General or the Prosecutor. What happens if they decline to make the request for a valid reason, such as the possibility that an investigation of the offense is still open and the witness is considered a potential suspect. The fact that this defendant has been accused does not mean that the offense was committed by only one person. Again, the use of the statute does not appear to be realistic.
And to suggest that J.M. should be allowed to testify before the jury in the hope that he might possibly have some relevant knowledge about the case and the further hope that he might change his mind and testify is not only unrealistic but eviscerates the principle of fairness inherent in the rule and vests the *229 defendant with unrestricted power to perpetrate a fraud upon the court and jury without any risk to himself. It would take little imagination to envision the schemes of fraud and deceit which such a policy would quickly implant upon normal defense tactics in some criminal cases, especially when the State's case is wholly circumstantial.
We can fairly assume that it is inevitable that the jury may draw some inferences from the silence of the witness and that their verdict could in some way be influenced thereby. The problem with such inferences is that they are drawn from inherently ambiguous silence and, therefore, are far less reliable than inferences from other sources. If allowed, the result could be to unfairly and unnecessarily subject the other party to potential prejudice. A defendant should be permitted to present to the jury all evidence that could conceivably aid his case. But there are limits. And principles of fairness compels the imposition of some minimal requirement that the defendant first demonstrate that the witness has relevant evidence concerning any issue in the case or the innocence of the defendant. Such did not occur here.
For these reasons, under the circumstances of this case, the witness may not be called by the defendant before the jury.