197 N.J. Super. 451 (1984)
484 A.2d 1355
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH T. KARLEIN, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided September 7, 1984.
*452 Kevin Daniels, Asst. Essex County Prosecutor, for plaintiff (George L. Schneider, Essex County Prosecutor, Attorney).
Rebecca Clark, Asst. Deputy Public Defender, for defendant (Joseph H. Rodriguez, Public Defender, Attorney).
NEWMAN, J.S.C.
This case raises the issue specifically left open in a footnote in State v. Jamison, 64 N.J. 363, 374, n. 1 (1974) of whether the defense may call a witness to the stand for the sole purpose of having the witness invoke the Fifth Amendment privilege in the presence of the jury.
The facts of the case as developed at trial are as follows. Defendant Joseph T. Karlein was convicted of possession of cocaine, possession of cocaine with intent to distribute and distribution of cocaine. On November 26, 1982 at 11:50 p.m., Newark Police Officer Thomas Sumter set up a surveillance at Mount Prospect and Second Avenue, Newark, New Jersey. Officer Sumter observed Karlein standing on the corner. Soon thereafter, Officer Sumter saw a green Toyota pull up to the *453 corner and stop at the red light. The officer then watched Karlein cross the street and walk over to the Toyota. Karlein and the driver, Joseph Guinta, Jr., engaged in conversation. Officer Sumter testified he saw an exchange take place between Karlein and Guinta in which Guinta gave Karlein money and Karlein reached into his left pocket and gave something to Guinta. Officer Sumter then approached the car and observed Karlein drop a packet on the ground. At the same time, Guinta attempted to give the passenger of the car a packet. Both packets were later found to contain cocaine. At this point Karlein and Guinta were placed under arrest.
Karlein testified to a different version of the events. He stated that he was visiting his grandmother for the Thanksgiving holidays. On the night in question he had visited his girlfriend's home and was returning to his grandmother's house. As he was passing through Mount Prospect Avenue one and a half blocks from Second Avenue where his grandmother lived, a man driving a green Toyota, which was stopped at the light, called him over. Karlein testified that he walked over to the car believing that the driver meant to ask him directions. He denied attempting to sell cocaine. When the officer picked up the packet which was on the ground outside the car and asked Karlein what it was, Karlein stated he did not know.
Guinta and Karlein were both arrested. However, they were indicted separately and their indictments were not consolidated for trial. During Karlein's trial the charges against Guinta, which derived from the above recounted incident, remained pending. At trial the defense sought to call Guinta to the stand for the sole purpose of having him exercise his privilege against self-incrimination before the jury.
To test whether Guinta would in fact invoke the Fifth Amendment if he were called to testify at trial a Rule 8 Hearing outside the presence of the jury was held. At such hearing, Guinta invoked the Fifth Amendment privilege in regards to all questions concerning the details of the incident. *454 This court then refused to allow the defense to call Guinta to the stand in front of the jury and instructed the prosecutor and defense to refrain from commenting on the failure of either defense or prosecution to call Guinta to testify.
As previously stated, the issue of the defense, rather than the State, calling a witness who will invoke the privilege against self-incrimination before the jury was specifically left open in State v. Jamison, 64 N.J. 363 (1974). In Jamison the defense intended to call a witness who would invoke his Fifth Amendment privilege in front of the jury. Id. at 370. On voir dire the witness indicated he would not answer on the grounds that the answers would tend to incriminate him. Id. at 372. However, at trial, the defense chose not to call the witness, relieving the Court of the opportunity to rule on the issue. The Court, nonetheless, pointed out:
We need not here pursue the question of whether the defense had a right to call Roseboro [the witness] before the jury after what transpired on the voir dire. It is plain to us that defense counsel justifiably concluded that the court would not allow it, probably concurring with the court's view that Cullen [103 N.J. Super. 360 (App.Div. 1968)] and Guido [40 N.J. 191 (1963)] dictated that course once the claim of privilege had been sustained, and may well have believed the interests of his client might suffer if he forced the issue. [Id. at 373-374]
In a footnote the Court indicated that the prosecution is precluded from calling to the stand a witness who has invoked his Fifth Amendment privilege on voir dire because it may lead the jury to draw inferences unfavorable to the defendant. The Court added:
However, no similar policy considerations would seem to apply in the reverse situation, where the defense desires to call a witness who is expected to decline to testify, asserting his privilege. However, we need not rule on the question definitively for present purposes. A proper ruling in any particular case will generally depend on the precise attendant circumstances. [Id. at 374, n. 1]
This issue left open in Jamison was recently addressed in State v. Cito, 196 N.J. Super. 220 (Law Div. 1984). In Cito the court precluded the defense from calling a witness to the stand who would invoke his Fifth Amendment privilege in the presence of the jury. The Cito court determined that there was no evidence that the witness had any knowledge or information *455 concerning the innocence of the defendant or the facts in issue. The witness had not given any information to anyone concerning the case.[1]
Here, the defense attempted to call Guinta, a separately indicted defendant, for the express purpose of having him invoke his Fifth Amendment privilege in the presence of the jury. Guinta clearly had knowledge of the facts relevant to the defendant's trial, rendering the Cito holding inapplicable.
While no other New Jersey case sheds light on the issue presented here, the federal courts have squarely addressed this question. The seminal case is Bowles v. United States, 439 F. 2d 536 (D.C. Cir.1970), cert. den. 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). In Bowles, the district court refused to allow the defense to call a witness who, out of the presence of the jury let it be known that he would refuse to testify on the grounds of self-incrimination. The district court then ordered both counsel to refrain from any mention of the witness. On review, the Court of Appeals had this to say.
We find no error in these rulings. It is well settled that the jury is not entitled to draw any inference from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense. [439 F.2d at 541]
This rule is founded on the precept that the guilt or innocence of a defendant is not to be inferred from a witnesses' invocation of the Fifth Amendment. The Bowles court further reasoned that a witnesses' invocation of the Fifth Amendment in the presence of the jury may have a high dramatic impact on the jury when in reality the probative value of a witness's exercise of his right not to testify on the grounds of self-incrimination is very little. 439 F.2d at 542. The logical outcome to this analysis is the principle that a witness may not be called to testify for the sole purpose of invoking the Fifth Amendment in *456 front of the jury. As the Bowles court concluded: "For the same reason no valid purpose can be served by informing the jury that a witness has chosen to exercise his constitutional privilege. The fact is not one the jury is entitled to rely on in reaching its verdict." Ibid.
The Federal Courts of Appeals that have considered the same issue have followed the lead of the Bowles case. See United States v. Johnson, 488 F.2d 1206, 1211 (1 Cir.1973); United States v. Lacouture, 495 F.2d 1237, 1240 (5 Cir.1974), cert. den. 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); United States v. Arnott, 704 F.2d 322, 375 (6 Cir.1983); United States v. Licavoli, 604 F.2d 613 (9 Cir.1979); United States v. Hart, 729 F.2d 662, 671 (10 Cir.1984); United States v. Reese, 561 F.2d 894 (D.C. Cir.1977). These cases all held that the defense may not call a witness to the stand only for the purpose of having the witness invoke the privilege of self-incrimination in the jury's presence.
Furthermore, the policy considerations in support of precluding a witness from claiming the Fifth Amendment privilege in front of the jury are implicitly recognized in Evid.R. 39. The rule in part states:
If a privilege is exercised not to testify  the judge and counsel may not comment thereon, no presumption shall arise with respect to exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom.
In the context of Evid.R. 39 it is clear that no presumption or inference shall arise from the exercise of the privilege. The trier of fact is not entitled to draw any adverse inference from a witness's exercise of a privilege, whether the inference be favorable to a defendant or favorable to the State. See Evid.R. 39, Comment 2 (Anno. 1984). The prosecution is prevented from calling a codefendant as a witness, or any other witness, when the prosecution has knowledge that the witness will claim his privilege against self-incrimination because such a practice operates to prejudice the defendant in the eyes of the jury. State v. Cullen, 103 N.J. Super. 360, 364-65 (App.Div. 1968). Basic fairness requires that similar prohibitions be placed on the defense.
*457 If the witness were allowed to invoke the privilege against self-incrimination at trial, the jury might infer that it was the witness who was involved in the criminal act, not the defendant. The probative value of this inference, as tending to prove the facts which resulted in the criminal indictment is dimunitive, while the possibility of undue prejudice is significant. While in theory the witness who invokes the Fifth Amendment produces no evidence whatsoever, the practical result is that inferences might be drawn which create a substantial danger of undue prejudice to the State and mislead the jury into findings not based on legitimate evidence. Since the probative value of the inferences is substantially outweighed by the danger of undue prejudice and of misleading the jury, the evidence is likewise excludable pursuant to Evid.R. 4.
For the foregoing reasons, this court concluded at the time of trial that the defense request to call Guinta to the stand so that he could invoke his privilege against self-incrimination in front of the jury be denied.
NOTES
[1] To the extent that dicta in Cito suggests that a witness who had knowledge of relevant facts could be called by the defense in order for the witness to exercise his Fifth Amendment rights at trial this court would not follow the dicta of the Cito opinion.