209 N.J. Super. 127 (1986)
506 A.2d 1295
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERTO NUNEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 3, 1986.
Decided March 25, 1986.
*129 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.
Thomas S. Smith, Acting Public Defender, attorney for appellant (Robert Abramowitz, of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for respondent (Mildred Vallerini Spiller, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by LONG, J.A.D.
After a jury trial for the stabbing death of Nelson Infanzon, Roberto Nunez was found guilty of aggravated manslaughter (N.J.S.A. 2C:11-4), possession of a knife for an unlawful purpose (N.J.S.A. 2C:39-4) and possession of a knife under circumstances not manifestly appropriate for such lawful uses as it may have (N.J.S.A. 2C:39-5(d)). After merging the weapons *130 counts, the trial judge, Judge Harrington, sentenced Nunez to a custodial term of 15 years with a seven year period of parole ineligibility on the aggravated manslaughter conviction and to a concurrent four year custodial term on the conviction for possession of a knife for an unlawful purpose. He also imposed an appropriate Violent Crime Compensation Board penalty. This appeal ensued in which Nunez claims, among other things, that:
Legal Issue # 1  The photographic identification procedure used under the totality of the circumstances as set forth during the "Wade Hearing" clearly showed that the identification procedure was so unduly prejudicial and impermissibly suggestive so as to taint the in court identification made of the appellant by Richard Perez, Jr. and therefore should have been excluded.
Legal Issue # 2  The trial court committed reversible error by charging the jury with murder under N.J.S. 2C:11-3.
Legal Issue # 3  It was reversible error for the lower court to give the accomplice theory charge to the jury in this case and alternatively, even if it was proper to instruct the jury on the accomplice theory, the charge as given was prejudicially defective and therefore, the appellant is entitled to a new trial.
Legal Issue # 4  The sentence imposed by the lower court was excessive and was an abuse of discretion because the appellant was not sentenced as a young adult offender under N.J.S. 2C:43-5 and also because a mandatory minimum parole ineligibility term was imposed.
Legal Issue # 5  The trial court committed reversible error by denying the defendant's request to require the co-defendant, Wilfredo Cuevas to invoke his privilege against self-incrimination in the presence of the jury.
Legal Issue # 6  The cumulative effect of all the trial errors and legal errors committed below mandates a new trial.
We have reviewed this record with care and have determined that these contentions are entirely without merit. R. 2:11-3(e)(2).
To be sure the identification procedure could have been more carefully formulated so as to eliminate the problem of suggestiveness inherent in a repeated single photo presentation. However, given the witness Perez's rather detailed description of Nunez shortly after the crime, and the certainty of his identification we are satisfied that the procedure did not result in the substantial likelihood of misidentification established as the standard for exclusion in Manson v. Brathwaite, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977) and *131 Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972).
Further it was not error for the trial judge to instruct the jury on the charge of murder (N.J.S.A. 2C:11-3) since the evidence, with favorable inferences, could reasonably support a finding that Nunez was guilty of that offense. State v. Reyes, 50 N.J. 454, 459 (1967). Likewise, under the reasoning of State v. Fair, 45 N.J. 77, 95 (1965), the trial judge properly instructed the jury on accomplice liability. Here the State proceeded on the theory that Nunez had delivered at least one of the fatal blows while the defense theory was that, although Nunez was present at the scene, either his co-defendant Cuevas or a third person did the actual knifing. Obviously, the first issue before the jury, as in Fair, supra, was whether there was evidence beyond a reasonable doubt that Nunez had delivered the fatal blow. Since the jury answered this in the affirmative it was unnecessary to consider whether there was community of purpose between the co-defendants. There was, however, sufficient evidence to warrant the instruction: it is undisputed that Nunez was at the scene and participated in the beating of Infanzon; there was credible evidence that he had received a knife from his co-defendant and that the two had chased Infanzon with a vengeful purpose which is sufficient to raise an inference of murderous intent on the part of either or both. Thus there was substantial evidence of shared intent, State v. White, 98 N.J. 122, 129 (1984) warranting the accomplice instruction.
We view as eminently correct Judge Harrington's refusal to accede to Nunez's demand that the co-defendant Cuevas be placed on the stand before the jury to invoke his Fifth Amendment right against self-incrimination. Cuevas, whose trial was severed, had previously entered a plea of guilty to aggravated manslaughter and was awaiting sentencing. When the defense expressed the intention to call Cuevas to the stand and Cuevas' attorney informed the judge that he would probably *132 invoke the Fifth Amendment, the judge properly held an Evid.R. 8 hearing to determine if Cuevas had a valid Fifth Amendment right to assert and whether it was properly invoked. Having answered these questions affirmatively, Judge Harrington refused to allow the defense to call Cuevas to testify before the jury. Nunez claims that since Cuevas had plea bargained to aggravated manslaughter and was awaiting sentencing at the time he was called to testify that he no longer had a valid Fifth Amendment privilege to assert. This is obviously incorrect since Cuevas' testimony would certainly have been self-incriminating and since he had yet to be sentenced and to exhaust his appellate remedies, his conviction was not final. See, e.g., State v. Blue, 129 N.J. Super. 8, 12 (App. Div. 1974), certif. den. 66 N.J. 328 (1974).
Although there is no appellate case law directly on point, it is clear that a defendant cannot call a witness solely for the purpose of having him assert his Fifth Amendment rights before the jury. State v. Karlein, 197 N.J. Super. 451 (Law Div. 1984). It is reversible error for the prosecution to call a witness when he knows in advance that the witness is likely to invoke the Fifth Amendment because it would "place before the jury innuendo evidence or inferences of evidence which the State could not get before the jury by the direct testimony of the witness." State v. Jordon, 197 N.J. Super. 489, 502-503 (App.Div. 1984); State v. Cullen, 103 N.J. Super. 360 (App.Div. 1968); State v. Fournier, 91 N.J. Super. 477 (App.Div. 1966). We see no reason why these principles are not equally applicable where it is the defense rather than the prosecution which attempts to put a witness on the stand solely in order to place innuendo evidence before the jury. To this extent the holdings in State v. Karlein, supra, and Bowles v. United States, 439 F.2d 536 (D.C. Cir.1970) are persuasive. In Karlein, defendant who was indicted for drug offenses sought to call as a witness the person arrested with him but separately indicted on the same charges. His sole purpose was to have the witness invoke his privilege against self-incrimination before the jury. *133 In refusing to allow the defendant to call the witness the court relied on the decision in Bowles where the Court of Appeals stated, "it is well-settled that the jury is not entitled to draw any inference from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." 439 F.2d at 541 (quoted in 197 N.J. Super. at 455). The court in Karlein further reasoned that the jury was not entitled to draw any adverse inference from the witness's exercise of the privilege, whether the inference be favorable to the defense or the prosecution. 197 N.J. Super. at 456 citing Evid.R. 39, Comment 2 (Anno. 1984). Since the prosecution was precluded from calling a witness when it was known that the witness would invoke the Fifth Amendment because the practice operates to prejudice the defendant in the jury's eyes, the court reasoned that similar concerns operated as a matter of basic fairness to prevent the defense from engaging in similar tactics. Id. The court also found the evidence excludable under Evid.R. 4:
If the witness were allowed to invoke the privilege against self-incrimination at trial, the jury might infer that it was the witness who was involved in the criminal act, not the defendant. The probative value of this inference, as tending to prove the facts which resulted in the criminal indictment is diminutive, while the possibility of undue prejudice is significant. While in theory the witness who invokes the Fifth Amendment produces no evidence whatsoever, the practical result is that inferences might be drawn which create a substantial danger of undue prejudice to the State and mislead the jury into findings not based on legitimate evidence. Since the probative value of the inferences is substantially outweighed by the danger of undue prejudice and of misleading the jury, the evidence is likewise excludable pursuant to Evid.R. 4. [197 N.J. Super. at 457].
We fully agree with the reasoning in Karlein and Bowles and adopt it here, affirming Judge Harrington's refusal to allow the defense to call Cuevas to the stand. In sum, we reject Nunez's contention that the claimed trial errors cumulatively warrant a new trial.
Finally, we view Nunez's sentence as unassailable. In our opinion the trial judge properly weighed the aggravating and mitigating facts in imposing sentence and, notwithstanding *134 Nunez's age, formulated a sentence which is not so shocking as to require our intervention. State v. Roth, 95 N.J. 334, 363 (1984). Though a youthful offender may be sentenced to an indeterminate term at the Youth Reception and Correctional Center (N.J.S.A. 2C:43-5), such a matter is clearly within the court's discretion. State v. Provet, 133 N.J. Super. 432, 439 (App.Div. 1975), certif. den. 68 N.J. 174 (1975). That discretion was not abused here.
Affirmed.