**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1786-24

AMIT SHAH, individually and
derivatively on behalf of JAI
SWAMINARAYAN MOUNT
LAUREL, LLC,

      Plaintiff-Appellant,

v.

VIJAY SHROFF, HEMA SHROFF,
603 FELLOWSHIP, LLC, and
MEHUL KHATIWALA,

      Defendants-Respondents,

and

ANTHONY J. FOSCHI and TUCKER
ARENSBERG, PC,

      Defendants.

_____

Submitted March 16, 2026 – Decided May 4, 2026

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2934-20.

Jake Etienne (Heskin & Proper, PLLC), attorney for appellant (Jake Etienne, Marc Penchansky and Yusuf T. Yilmaz, on the briefs).

Archer & Greiner, PC, attorneys for respondents Vijay Shroff, Hema Shroff, and 603 Fellowship, LLC (Michael J. Lauricella and Alexis M. Way, on the brief).

Thomas J. Gosse, attorney for respondent Mehul Khatiwala.

PER CURIAM

In this breach of contract action, plaintiff Amit Shah, individually and on behalf of Jai Swaminarayan Mount Laurel, LLC (JSML), appeals the denial of his motion for a new trial following a jury verdict in favor of defendants Vijay Shroff, Hema Schroff, 603 Fellowship, LLC, Mehul Khatiwala, and settling defendants Anthony J. Foschi, Esq. and Tucker Arensberg, P.C. Plaintiff also challenges a number of decisions made by the court during trial, including: (1) the denial of its application to call two witnesses who were separately charged with criminal offenses in an unrelated matter, whom asserted their Fifth Amendment rights; (2) the denial of its application for an adverse inference charge to the jury based on the exclusion of the witnesses' testimony; and (3) the court's instruction directing the jury to refrain from considering why any

particular party has not been called as a testifying witness. We reject these arguments and affirm.

I.

Because the record before us is familiar to the parties, we limit our recitation of the facts to those necessary to resolve the issues raised on appeal.

Plaintiff has a background in hotel ownership and management, having bought and sold several hotels. In August 2014, plaintiff and his brother-in-law, Peter Bhai (Bhai), sought to purchase a Red Roof Inn in Mount Laurel before it was listed on the market, offering $4,500,000, including a $100,000 non-refundable deposit. In September or October 2014, Bhai backed out of the deal, after which plaintiff approached defendant Vijay Shroff (Vijay), who expressed an interest in becoming a member of plaintiff's company, JSML, and to enter "into a joint venture to purchase the property."[1] At the time, JSML was represented by Anthony J. Foschi, Esq. (Foschi).

Separately, on October 6, 2014, Defendant Mahul "Mike" Khatiwala (Khatiwala), plaintiff's nephew and the managing member of the Delaware Hotel Group, LLC (DHG), emailed Sue Eastman (Eastman), a partner in the Westmont

---

[1] Because they share the same last name, we refer to Vijay and Hema Schroff by their first names, intending no disrespect.

Hospitality Group (Westmont), then-owners of the Red Roof Inn, to express interest in purchasing the hotel, stating, "[i]f you have not formalized a deal with a buyer I would really like the opportunity to get this deal done."

In early 2015, plaintiff and defendant Hema Shroff (Hema), Vijay's wife, joined JSML to purchase the Red Roof Inn. The parties executed an operating agreement, which allocated an 82% ownership share of the company to Hema and 18% share to plaintiff. Hema additionally executed a power of attorney authorizing Vijay to act as her proxy in all JSML matters.

Approximately one month later, in February 2015, while plaintiff and JSML were under contract to purchase the Red Roof Inn, plaintiff alleges that he contacted Vijay via phone to request reimbursement of attorney's fees related to the transaction, and that during the call, Vijay backed out of the deal. Vijay claims that it was plaintiff who cancelled the deal during their phone call.

Plaintiff later learned that a newly formed company had contacted the seller to replace him and JSML as the purchaser. The company, 603 Fellowship, LLC was co-owned by Hema, Kishor Shroff, Ashish Scroff, Neel Parik and Sima Patel (Khatiwala's wife).[2] At some point, Khatiwala also joined 603 Fellowship,

---

[2] An undated operating agreement was also executed, assigning the following ownership shares to 603's members: 50% to Hema (defendant); 15% to Kishor Shroff; 15% to Ashish Shroff; 10% to Neel Parikh; and 10% to Sima Patel.

A-1786-24

as evidenced by a February 24, 2015 email to the seller. Foschi also began to represent 603 Fellowship in its purchase of the hotel.

According to plaintiff, the Shroff family owned an 80% membership interest in the newly formed 603 Fellowship and purchased the Red Roof Inn using the exact same terms that he had negotiated with the sellers and Foschi. Prior to closing on the sale of the Red Roof Inn, Foschi contacted plaintiff and requested that he sign a release and discharge of any claims against 603 Fellowship related to the purchase of the Red Roof Inn. Plaintiff signed and returned the release and was paid $19,945.00 at closing.

On September 1, 2020, plaintiff filed his complaint naming Vijay, Hema, 603 Fellowship, and other fictitious parties as defendants. Against Vijay and Hema, plaintiff alleged usurpation of corporate opportunity and breach of fiduciary duty. Plaintiff additionally alleged tortious interference with contract against Vijay and 603 Fellowship.

Plaintiff later amended his complaint on April 15, 2021, adding Khatiwala, Foschi, and Tucker Arensberg, P.C. Plaintiff preserved his prior claims and incorporated the newly added defendants into his previous causes of action for aiding and abetting breach of fiduciary duty, civil conspiracy, and tortious interference with contract to which plaintiff also added "and/or inducing

A-1786-24

breach of contract." Additionally, new claims were added against Foschi and Tucker Arensberg, P.C. only, alleging breach of contract, legal malpractice, and breach of fiduciary duty.

In November 2023, Khatiwala and his employee, Jennifer Watkins, were indicted on federal charges, including bank fraud, arising in Maryland, which are unrelated to plaintiff's failed attempt to purchase the Red Roof Inn. Before trial, however, plaintiff moved to call Khatiwala and Watkins as witnesses in his case-in-chief. Although initially held in abeyance, the trial court later heard plaintiff's motion as to Watkins outside the presence of the jury, during which Watkins invoked her Fifth Amendment right in response to each question posed. The record also shows that Khatiwala advised the court of his intention to invoke his Fifth Amendment right against self-incrimination, if called as a witness in plaintiff's case. Relying on N.J.R.E. 404(b) and 403, the court ruled that Khatiwala did not have to testify, and the jury never heard from Khatiwala or Watkins.

The dispositive issue at trial was whether plaintiff proved by the preponderance of evidence if it was Vijay who backed out of the deal for JSML to purchase the Red Roof Inn during the phone call in which plaintiff and Vijay were the sole participants.

A-1786-24

Plaintiff testified he had called Vijay to discuss Foschi's bill, and Vijay told plaintiff that he was "no longer going forward with this deal. You can do what you like." Vijay testified that "[Shah] backed out of the deal. . . . Without my knowledge, without my permission, he just called me to say I don't want to go forward with the deal." Defendants Vijay and Hema on behalf of 603 Fellowship also testified that plaintiff never did anything to proceed with the deal after Vijay allegedly backed out, including that plaintiff never sought to obtain any other partner or additional time to close. Plaintiff settled and dismissed his suit against Foschi.

At the close of the trial, the jury was presented with a verdict form consisting of forty-four questions. The first of these questions asked:

> 1. Did [p]laintiff prove by preponderance of the evidence that [Vijay] backed out of the purchase of the Red Roof Inn through [JSML]?
>
> . . . .
>
> If you have answered "YES" to Question No. 1, GO TO Question No. 2.
>
> If you have answered "NO" to Question No. 2, PLEASE STOP. Your verdict is for the [d]efendants. Please tell the [c]ourt attendant that you have reached a verdict.

The jury unanimously answered "NO" to the first question, and the court entered an order and judgment reflecting the no cause verdict. Within weeks,

plaintiff moved for a new trial under Rule 4:49-1, arguing that Khatiwala and Watkins should have been compelled, pursuant to subpoena, to testify or invoke their Fifth Amendment privilege before the jury, and that the jury should have been given an adverse inference charge based on any such invocation.

During oral argument on the motion, plaintiff acknowledged that neither witness had knowledge of the phone call between plaintiff and Vijay, during which the parties alleged it was the other who cancelled the contract. Plaintiff admitted these potential witnesses were being called solely to attack Vijay's credibility by associating him with others under criminal indictment. The record before us includes the following:

> PLAINTIFF'S COUNSEL: So the only witness with knowledge -- the only defendants with knowledge were [plaintiff] -- or [Vijay] and Khatiwala. So when you have [Vijay] giving his version of events, and then my client giving a diametrically opposed version of those same events, and then if I was allowed to question Khatiwala or Watkins on those same topics and they take the Fifth, I don't know how that wouldn't have a dramatic effect on the credibility of [Vijay] when [Vijay] is saying one thing and then you have the defendant, that was literally lockstep with him throughout the entire transaction, not only contradicting him, but saying I'm not even going to be able to answer those questions because they may subject me to criminal liability.
>
> [(Emphasis added).]

A-1786-24

Plaintiff additionally confirmed that neither Khatiwala nor Watkins could offer any testimony regarding the dispositive issue involving the critical phone call between Vijay and plaintiff, and reiterated that their testimony was only sought to imply Vijay was associated with criminal activity due to the charges against Khatiwala and Watkins:

> THE COURT: Except that there's no evidence -- there was absolutely no evidence, either from your client or [Vijay], that either Watkins or Khatiwala was a participant in the critical telephone conversation, correct?
>
> PLAINTIFF'S COUNSEL: That's true.
>
> THE COURT: All right. So neither had -- neither were on the call and could say, yes, [Vijay] is right or [plaintiff] is correct?
>
> PLAINTIFF'S COUNSEL: That's true. But that's the whole point. It's the jury's determination. And that's the question we lost on. So now you say the jury is going to determine credibility. Who is telling the truth on a he said, she said conversation where everyone admits there's no documents to support one side or the other? And if you have two witnesses who we are not allowed to question that would have directly contradicted and undermined [Vijay] on that point. It affects the entire case.
>
> [(Emphasis added.)]

The court denied the motion for a new trial and issued a detailed, well-reasoned decision, rejecting plaintiff's contention that the jury should have been

given an adverse inference charge based on the witnesses' invocation of their Fifth Amendment rights, particularly where plaintiff failed to identify any proper inference the jury could have been instructed to draw.

On the ultimate issue of whether the court erred in denying plaintiff's motion for a new trial, the court reasoned that plaintiff failed to meet his burden of establishing that a new trial was warranted absent any finding of a miscarriage of justice. The court added:

> There was no factual dispute that immediately after this telephone conversation, [plaintiff] instructed counsel for [JSML] to seek a refund of the $100,000 non-refundable deposit which had been funded by [plaintiff]. The attorney was successful in obtaining that repayment. <u>There further was no dispute that [plaintiff] was copied on numerous emails subsequent thereto which sought to put the Red Roof [Inn] purchase deal back in place, and sought [plaintiff's] participation in the deal.</u> [Plaintiff] denied reading any of the emails with the exception of an email from Khatiwala regarding the deal, but [plaintiff] admitted he never responded to Khatiwala.
>
> <u>Given the jury's findings, issues regarding the testimony or lack thereof from Khatiwala and Watkins had no bearing on the jury determining what occurred during the telephone conversation in which only [plaintiff] and [Vijay] participated.</u> Plaintiff therefore is unable to show that it convincingly appears that there was a miscarriage of justice under the law.
>
> [(Emphasis added).]

10

The court further concluded:

> [B]oth Khatiwala and Watkins were entitled to assert their [F]ifth [A]mendment right against self-incrimination due to their being under indictment and awaiting trial on criminal charges for bank fraud and conspiracy to commit bank fraud, among other charges. No evidence was presented which would warrant an adverse inference charge with respect to the assertion of that privilege. Further, other than surmise and innuendo, there is no basis upon which Khatiwala and witness Watkins should have been required to exercise their [F]ifth [A]mendment rights in front of the jury. Rather, it may have been reversible error to permit the exercise of the privilege against self-incrimination to occur before the jury. State v. Nunez, 209 N.J. Super. 127, 132 (App. Div. 1986). For these reasons, the motion for a new trial is denied.

In his appeal, plaintiff reprises the same arguments raised before the trial court, including that New Jersey law entitles him to call Khatiwala and Watkins to answer questions or invoke their Fifth Amendment rights before the jury, and that the court's rejection of those arguments improperly prevented the jury from considering critical evidence.

## II.

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522

(2011)); see also Twp. of Manalapan v. Gentile, 242 N.J. 295, 304 (2020). A court's ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521-22).

In evaluating the trial court's decision to grant or deny a new trial, "[we] must give 'due deference' to the trial court's 'feel of the case,'" however, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Id., 231 N.J. at 386-87 (first quoting Risko, 206 N.J. at 521; and then quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"On a motion for a new trial, all evidence supporting the verdict must be accepted as true, and all reasonable inferences must be drawn in favor of upholding the verdict." Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). Significantly, "a trial court should not interfere with a jury verdict unless the verdict is clearly against the weight of

A-1786-24

the evidence." Caldwell v. Haynes, 136 N.J. 422, 432 (1994). To overturn a jury verdict, "[t]he verdict must shock the judicial conscience." Ibid. Moreover, "[a] jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Hayes, 231 N.J. at 385-86 (quoting Risko, 206 N.J. at 521).

Appellate courts "typically review evidentiary rulings under a deferential standard and will 'uphold [the trial court's] determinations absent a showing of an abuse of discretion.'" State v. Trinidad, 241 N.J. 425, 448 (2020) (alteration in original) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). We defer to the court's evidentiary rulings unless they were "so wide of the mark that a manifest denial of justice resulted." State v. Gonzalez, 249 N.J. 612, 633 (2022) (quoting State v. Singh, 245 N.J. 1, 13 (2021)). If we determine the court mistakenly exercised its discretion, "we must then determine whether any error found is harmless or requires reversal." Ibid. (quoting State v. Prall, 231 N.J. 567, 581 (2018)). We review a trial court's legal conclusions de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

III.

Applying the above legal principles, we reject defendant's arguments and affirm the court's evidentiary rulings and the jury's verdict in defendant's favor substantially for the reasons articulated by the court in its statement of reasons accompanying the order denying plaintiff's motion for a new trial. Plaintiff's contentions are devoid of any legal and evidentiary support and are unavailing in each instance.

A.

Plaintiff first argues New Jersey law entitles him to call party-defendant Khatiwala to the stand in the presence of the jury "to either answer questions or invoke his Fifth Amendment privilege." The Fifth Amendment of the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself," and that privilege extends to any proceeding, civil or criminal, where the answers might tend to incriminate the witness.

Plaintiff further claims the court erred by prohibiting him from calling Khatiwala to the stand and allowing him "to exercise a 'blanket' Fifth Amendment privilege through his attorney as his surrogate." Plaintiff argues that Khatiwala's testimony was relevant to the ultimate issue at trial, namely

A-1786-24

whether plaintiff or Vijay withdrew from the Red Roof Inn transaction, given Khatiwala's involvement in the formation of 603 Fellowship, an entity partially owned by his wife, which ultimately completed the purchase. Defendant Khatiwala asserts that the issue raised by plaintiff at trial was never simply whether they had a right to call Khatiwala, but whether plaintiff would be permitted to call Khatiwala to the stand to have him exercise his Fifth Amendment rights in the presence of the jury, and whether the jury would receive an adverse inference charge. Khatiwala further asserts that "plaintiff[] made this abundantly clear during his argument before the trial judge."

Plaintiff's contention is unavailing, as no such requirement exists in our jurisprudence, and his reliance on an unpublished decision is unpersuasive. Moreover, plaintiff impeaches his own argument when he asserted before the trial court that Khatiwala and Watkins were subpoenaed to appear as witnesses for the sole purpose of inferring that since they had been charged with crimes unrelated to this matter, and because they were associates of Vijay and Hema, the jury could infer that all defendants were involved in criminal activity presumably affecting the transaction at issue in this trial. However, no such inference is permissible under N.J.R.E. 404(b). Thus, plaintiff's stated purpose

A-1786-24

would have been nonetheless impermissible character evidence, and unduly prejudicial under N.J.R.E. 403.

As the court properly noted, "[p]laintiff's theory with respect to Khatiwala, . . . was that Khatiwala convinced [Vijay] to terminate the purchase agreement of the hotel by JSML. Khatiwala was not a party to the short telephone call between [Vijay] and [plaintiff] during which it was alleged the parties terminated the deal." And, "it was never suggested that Khatiwala's testimony could address the specifics of the telephone conversation between [Vijay] and [plaintiff] . . . . Any proposed testimony would have had no bearing on the jury's determination of this specific question which concluded deliberations."

Given the single dispositive question for which the jury returned a no cause verdict, this appeal can be reduced to a sole issue: whether the jury's finding, that plaintiff failed to prove by a preponderance of evidence that Vijay backed out of the purchase of the Red Roof Inn through JSML, constituted a clear miscarriage of justice. Plaintiff's argument on appeal is not relevant to that issue.

Relevant evidence "means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E.

401. For evidence to be relevant, it first must have probative value, which is the tendency in reason to prove or disprove a fact; second, that fact must be of consequence to the matter. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 401 (2025) (quotations and citations omitted). In determining whether evidence has probative value, the analysis focuses on the "logical connection between the proffered evidence and a fact in issue." Id. (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 15 (2004)).

Here, plaintiff fails to establish a sufficient probative and non-prejudicial connection between the anticipated invocation of the Fifth Amendment by Khatiwala or Watkins and whether Vijay withdrew from the transaction during the phone call with plaintiff. Plaintiff's proffered purpose is likewise flawed, as it rests on an impermissible attempt to link Khatiwala's and Watkins' unrelated criminal indictments to Vijay's credibility. See N.J.R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," except for expert testimony under the evidentiary rules); see also Biro v. Prudential Ins. Co. of America, 57 N.J. 204 (1970), rev'g on dissent 110 N.J. Super. 391, 402-06 (App. Div. 1970); Biunno, Weissbard & Zegas, cmt. on N.J.R.E. 602 ("If a witness does not have either personal knowledge of a matter, or the special qualifications

17

pursuant to N.J.R.E. 703 necessary to give expert opinion about it, his testimony about the matter should not be admitted").

As the sole issue decided by the jury was whether plaintiff had proven Vijay backed out of the deal during their phone call, and because plaintiff does not allege that the witnesses had personal knowledge of that event, we are hard-pressed to conclude that Khatiwala and Watkins' testimony would have elucidated the contents of the phone call at issue. Moreover, Khatiwala and Watkins' pending indictment on federal charges was unrelated to the transaction at issue in plaintiff's case, and thus, the court properly excluded their testimony under N.J.R.E. 404(b) and 403.

We are satisfied that the court did not err in its refusal to permit plaintiff to call Khatiwala solely for the purpose of having him assert his Fifth Amendment rights in the presence of the jury. Prudent to this issue here, it is reversible error to call a witness when it is known in advance the witness is likely to invoke the Fifth Amendment as it would "place before the jury innuendo evidence or inferences of evidence which . . . could not get before the jury by the direct testimony of the witness." See State v. Nunez, 209 N.J. Super. 127, 132 (App. Div. 1986) (quoting State v. Jordon, 197 N.J. Super. 489, 502-503 (App. Div. 1984)). Simply stated, it is clear a witness cannot be called–as

18

attempted by plaintiff here to call Khatiwala–exclusively for the purpose of having him assert his Fifth Amendment rights before the jury. Ibid. (citing State v. Karlein, 197 N.J. Super. 451 (Law Div. 1984)).

It is well-established that a witness expected to invoke his Fifth Amendment privilege should not do so in the presence of a jury. "If the witness were allowed to invoke the privilege against self-incrimination at trial, the jury might infer that it was the witness who was involved in the criminal act." Id. at 133 (quoting Karlein, 197 N.J. Super. at 457). Therefore, we have stated that "the jury is not entitled to draw any inference from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." Ibid. (quoting Bowles v. U.S., 439 F.2d 536, 541 (D.C. Cir. 1970) (en banc)).

In sum, the dispositive issue at trial was whether plaintiff proved by a preponderance of the evidence that Vijay backed out of the deal to purchase the Red Roof Inn during the phone conversation with plaintiff. On this question, the jury unanimously found for defendants. Based on this verdict, the court found, and we agree, that the exclusion of Khatiwala's and Watkins' testimony, and the absence of any adverse inference charge, had no bearing on the jury's determination of what occurred during the putative phone call, in which plaintiff

and Vijay participated. As the court concluded, "[g]iven the jury's findings, issues regarding the testimony or lack thereof from Khatiwala and Watkins had no bearing on the jury determining [of] what occurred during the telephone conversation in which only [plaintiff] and [Vijay] participated. Plaintiff, therefore, cannot establish that it convincingly appears that there was a miscarriage of justice under the law," or that a new trial is warranted.

Accordingly, we are satisfied the court committed no error in denying plaintiff's motion for a new trial.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

20

A-1786-24