**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph D. KERR, Defendant-Appellant.**

**No. 82–1229.**

United States Court of Appeals, Tenth Circuit.

July 1, 1983.

Alan R. Carlson of Garrison, Brown & Carlson, Bartlesville, Okl. (Michael R. Brown, Bartlesville, Okl., with him on brief), for defendant-appellant.

Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, Okl. (Frank Keating, U.S. Atty., Tulsa, Okl., with him on brief), for plaintiff-appellee.

Before SETH, Chief Judge, McKAY, Circuit Judge, and BRATTON, District Judge *.

SETH, Chief Judge.

The defendant was indicted, tried and convicted for receiving and concealing a stolen car moving in interstate commerce. 18 U.S.C. § 2313. The issues raised on appeal concern the validity of a telephone wiretap and the ruling by the trial court that a particular witness could not be called by the defendant.

The wiretap issue raised in a motion to suppress centers on the authority of Mr. Philip B. Heymann, the then Chief of the Criminal Division, Department of Justice, to authorize an application for a wiretap of defendant's phones. An application was made on January 20, 1981 based on letter authority from Mr. Heymann dated January 19, 1981. The order of the district court was issued for the wiretap on January 20, 1981 and the intercept was thereafter conducted.

Mr. Heymann, as mentioned, was then Chief of the Criminal Division, and had been under Mr. Griffin Bell. The delegation of authority to Mr. Heymann from Attorney General Bell was dated August 15, 1978. Mr. Bell was succeeded by Mr. Benjamin R. Civiletti as Attorney General on August 16, 1979. The authority from Mr. Heymann used to present the matter to the district court was based on the Griffin Bell delegation. The record shows that on January 19, 1981, the date of Mr. Heymann's authorization letter, Mr. Civiletti had issued new authority to Mr. Heymann. We do not consider the implications of this new authority. The defendant urges that the wiretap order was invalid because the delegated authority presented to the court was not from an incumbent Attorney General, and thus did not meet the "responsive to political process" standard mentioned in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341.

Wiretaps are obviously different in some respects from the other functions and the continuing activities of the Attorney General's staff through changes in administration. Nevertheless, in our opinion, when the authority to authorize applications for wiretaps has been validly delegated to a person in a particular position, as we are

* Honorable Howard C. Bratton, United States District Judge for the District of New Mexico, sitting by designation.

concerned with here, it continues so long as that person remains qualified. There was no limitation in the delegation of authority, and the statute contains no express limitations nor language from which one could be implied.

As to continuing authority to act under a special designation the Supreme Court at 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 affirmed *United States v. Morton Salt Co.,* 216 F.Supp. 250 (D.Minn.1962), wherein the trial court had upheld the continuation of authorization to appear before grand juries given by an Acting Attorney General after he had been succeeded. The court noted that the authorization was valid when made and continued until revoked despite changes with the Department of Justice. The *Morton Salt* case concerns what may be more of a day-to-day matter but the reasons for upholding a continuation are the same. *See also In Re Weir,* 520 F.2d 662 (9th Cir.1975), and *United States v. Mallory,* 507 F.Supp. 99 (D.Md.1981). The reference by the Supreme Court in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 to those individuals "responsive to political process" refers to those named in the statute and a reason for limiting authority to those named. It cannot refer to the continuation of authority properly delegated with changes in administration. *Giordano* is certainly clear as to the limitations in the Act as to positions. The delegation of authority here concerned to Mr. Heymann was valid when made and continued to be so after the then Attorney General left office as Mr. Heymann remained in a position designated in the Act. The affidavit of probable cause by Agent Holland for the wiretap was adequate, was considered by the trial judge, and the order authorized a valid intercept.

The wiretap information sought to be used before the grand jury in these proceedings related to an offense somewhat outside the grounds or basis for the original authorization. The Act in 18 U.S.C. § 2517 requires that prior court approval be secured for the disclosure of such information to a grand jury. The fact that the information may indicate a particular criminal activity not anticipated when the original wiretap authorization was obtained does not necessarily mean that there are created new and separate circumstances under the Act to require an application to amend the original authorization. The additional information was obtained during the course of a valid intercept. A nice theory and analysis can be constructed on the point that the crime may be different, but the fact remains that the purpose of the Act has here been met with the application to the court for a disclosure order under 18 U.S.C. §§ 2516 and 2517(5) to permit disclosure to a grand jury for use as evidence of a violation of 18 U.S.C. § 2313. No useful purpose would be served nor added protection obtained by a requirement that instead the original wiretap order be amended. *See United States v. Masciarelli,* 558 F.2d 1064 (2d Cir.1977). The trial court entered an order on July 25, 1981 approving release to the grand jury of the information of the unanticipated criminal activity. (The motion for approval of disclosure was made on July 21, 1981.) The information was so released and the grand jury indicted the defendant on August 4, and trial was held on the indictment.

The court had previously considered an application for special disclosure to state and city officers before the July 25 order here challenged. This was entered after the filing of the several five-day reports under the initial authorization, and it recites the approval of the fourth of the five-day reports.

We must conclude that the original wiretap was in accordance with the Act; the release of information under the disclosure motion and order was proper; and the timing of the release to the grand jury for the August 4 indictment was also valid.

The defendant argues that a previous disclosure of this information had been made to the grand jury leading to a previous indictment for the same offense handed down on July 7. This indictment was dismissed by the United States Attorney and it was superseded by the indictment upon

which defendant was tried. The defendant urges that the initial and unauthorized submission of information for the July 7 indictment prevented the later submission of the same information to the same grand jury for the later indictment. We see no error in this procedure. The information was the same as far as the record shows, and that it may not have been authorized for a prior indictment does not infect the later one.

■ The appellant urges that it was error for the trial court to rule that a particular witness, James Dwayne Kerr, a relative of defendant, could not be called by the defendant to testify. The court held a hearing on the issue and decided that the witness would do nothing but invoke the Fifth Amendment as to all pertinent questions. During the trial the defendant testified as to what the witness had done and what he had told him about the stolen van. This basically was that it was the witness' van, in his possession, and not defendant's.

We have considered what action should be taken by the trial court when it appears that the only reason for calling a witness is to have him invoke the Fifth Amendment, in *United States v. Martin*, 526 F.2d 485 (10th Cir.1975), and *United States v. Eitel*, No. 75–1537 (10th Cir. January 30, 1976), as well as what if any admonitions should be made to the jury. *See also Bowles v. United States*, 439 F.2d 536 (D.C.Cir. *en banc* 1970). We conclude that the trial court followed the required procedure. There was no absent witness instruction given in *United States v. Eitel*. In the case before us there was no mention within the hearing of the jury whether or not James Dwayne Kerr would be a witness or not. There was no direct request for an admonition or instruction as to the unavailability or absence of the "witness."

■ The jury was given transcripts of tapes only when the tapes were played—not before or after. The defendant complains of this limited use but we see no error. *See United States v. Watson*, 594 F.2d 1330 (10th Cir.1979). A clear admonition was given to the jury before the tapes were used and evidence was admitted as to the accuracy of the transcripts. We find no valid objection to the search.

It is the order and judgment of this court that the judgment of the trial court is in all respects AFFIRMED.