608 A.2d 1335

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DOUGLAS J. MCGRAW, DEFENDANT-APPELLANT.

Argued January 6, 1992—Decided July 16, 1992.

*Lorraine E. Stanley,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney; *Lorraine E. Stanley* and *Thomas C. Miller,* Designated Counsel, on the briefs).

*Tanya Y. Justice*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

In an unreported opinion the Appellate Division affirmed the convictions of defendant, Douglas McGraw, for second-degree aggravated assault and two possessory offenses. The charges arose out of a melee in the course of which the victim was stabbed. The single issue on which we granted certification, 126 *N.J.* 337, 598 *A.*2d 894 (1991), is posed in defendant's petition as follows: should the court have told the jury that defendant's brother Larry McGraw had been called to testify but had invoked his Fifth Amendment right not to do so, or, failing that, should the court at least have instructed the jury that it should draw no negative inference against defendant as a result of his brother's not having testified?

We conclude that the trial court properly insulated the jury from the witness's invocation of the right not to testify; and that although the court should have instructed the jurors that they should draw no inference from either party's failure to have produced Larry McGraw, that deficiency in the charge does not require reversal of defendant's convictions. We therefore affirm.

I

The brouhaha that produced the criminal charges before us has a colorful background. We limit our recitation, however, to only so much of the detail as is necessary to set the legal issue in context.

On an August evening in 1986 defendant, Douglas McGraw, and his brothers, Michael and Larry, were playing cards and drinking beer at Michael McGraw's residence in South Dennis. The victim, David Wayne Robson, arrived on the scene with

Brian Fischer, and shortly thereafter an argument ensued between defendant and Robson. That disagreement escalated into a fist fight on the front lawn. The tranquility of the occasion was further disrupted by an altercation between defendant's brother Larry McGraw and Fischer. When all the participants had tired of their pugilistic exertions (the number of fights as well as their time and location remains unclear) and the hostilities had subsided, the combatants took advantage of the lull to assess the carnage. Robson was found to have suffered cuts about the face, stomach, and side, and defendant discovered a severe laceration on his hand. While defendant retired from the battleground to his brother's house to tend his wound, Fischer took Robson, whose bowels were exposed, to the hospital. On the way, the victim told Fischer that defendant had stabbed him.

At trial, the prosecution claimed that although none of the witnesses could testify to having seen a knife during the fight, defendant had stabbed Robson with Robson's five-inch buck knife, which the victim admitted to having carried, folded but unsheathed, in his back pocket. (Robson, a commercial fisherman, explained that he used the knife in his work.) Defendant argued that because Robson had emerged unhurt from their fisticuffs and because defendant had engaged in none of the other brawls, defendant could not have stabbed the victim. He claimed that he had neither possessed nor used a knife that evening, but that he had seen Larry with a knife immediately after the fight. He recalled that during the fight he had felt a burning sensation in his hand but had assumed that he had fractured a bone, and that only after some measure of peace had been restored did he realize that he been cut. He testified that his brother Larry had started crying and hugging defendant when, after the tussle, he realized that defendant had been cut. According to defendant, Larry later told him that he would not "let [defendant] take the rap for nothing." In an effort to rebut the unfavorable results of a polygraph examination, to which he had stipulated before trial, defendant asserted

that he had been nervous about the possibility that he would incriminate Larry. Other witnesses to the evening's events corroborated defendant's version of the episode.

After defendant had completed his testimony, the court, having learned that Larry was to be called as the next witness, conducted a hearing pursuant to *Evidence Rule* 8. The court found a sufficient basis for Larry's invocation of the Fifth Amendment privilege against self-incrimination. See *State v. Craig*, 107 *N.J.Super.* 196, 199, 257 *A.*2d 737 (App.Div.) (citing *State v. De Cola*, 33 *N.J.* 335, 350, 164 *A.*2d 729 (1960)), *certif. denied*, 55 *N.J.* 169, 259 *A.*2d 919 (1969). Although defense counsel never specifically requested that the court inform the jury that Larry had invoked the Fifth Amendment privilege, counsel implied, in chambers, that he expected the court to allow Larry to testify to non-incriminating matters. The expectation was short lived.

THE COURT: No. Let me just tell you something. He either testifies or he doesn't. He can't elect to testify to parts and then assert the privilege otherwise. Do you follow me?

[DEFENSE COUNSEL]: I understand, Judge.

THE COURT: He either asserts the privilege or he doesn't assert it. Now, he has asserted the privilege here in the Court's judgment and, therefore, he can't testify to anything. He can't testify piecemeal and throw things out there that he wants to say to help his brother and then hide behind the privilege to protect himself against something that could result in charges against him.

Defendant did not request the court to instruct the jury that it could not draw any inference from Larry's non-participation in the trial. See *State v. Clawans*, 38 *N.J.* 162, 171, 183 *A.*2d 77 (1962). Nor did defendant request that the court confer use immunity on testimony that Larry might give. See *Virgin Islands v. Smith*, 615 *F.*2d 964, 969–74 (3d Cir.1980).

The only comment made in the jury's presence regarding the possibility that Larry would testify came from defendant on cross-examination:

Q: And you said, on your direct testimony, that you didn't discuss this with Larry about you telling him that you were going to testify that you saw him with the knife. Did you tell Larry you were going to do that?

A: You know, he knows. He said if he has to, he'll tell them. He'll do it.

Q: If he has to what?  I didn't hear that.
A: If it comes down to it, he'll tell them what happened.
Q: Is his story going to be different from what your story is?
A: It shouldn't be.
Q: It shouldn't be?
A: No.

The prosecutor did not request a missing-witness instruction, see *Clawans, supra*, 38 *N.J.* at 171, 183 *A.*2d 77, nor did he comment during summation on defendant's failure to produce Larry at trial.

About a month after defendant's conviction Larry McGraw submitted a certification containing his version of the events. In it he claimed that he left his brother Michael's house after Michael and another occupant had ejected Fischer.  He alleged that after proceeding to "the fight area to attempt to pull [defendant and Robson] apart," he observed a "buck-type knife in the hand of * * * Robson while he was still wrestling with [defendant] on the ground."  Larry claimed that "[w]hen I went to grab * * * Robson and pull him away from [defendant], * * * Fischer pushed or shoved me into the victim, causing me to fall heavily upon [Robson] and possibly causing [Robson] to fall against his weapon," and that "[s]hortly after this took place, [Robson] yelled that he was hurt and eventually left the scene with * * * Fischer."

On appeal defendant argued, in respect of the issues before this Court, that

the [trial] court should have told the jury that Larry McGraw had been called to testify but had invoked his Fifth Amendment right not to testify * * * or should have instructed the jury that no negative inference should be drawn against defendant as a result of Larry McGraw not having testified.

In affirming the conviction, the Appellate Division concluded that defendant was not entitled to have Larry invoke the privilege in the presence of the jury.  The court observed that although it provides indirect support for defendant's claim, *Evidence Rule* 39, which allows for discretionary instructions precluding an inference from invocation of a privilege, is addressed to the sound discretion of the trial court and that only a

request for such instructions by the party holding the privilege triggers the rule. Although the court recognized merit in defendant's arguments for a right to have one's witness assert the privilege before the jury, it concluded that

> this case [does not] present[] the appropriate vehicle to further develop the issue or to depart from existing case law in light of the fact that defendant never requested that his brother be called to the stand in the jury's presence or that the court charge the jury that it may make inferences in favor of defendant as a result of [Larry's] assertion of the privilege.

## II

We first examine defendant's contention that the refusal to allow Larry to invoke his privilege in the presence of the jury denied defendant the right to compulsory process as guaranteed by our federal and state Constitutions. See *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. The Court of Appeals for the District of Columbia Circuit rejected that very argument in upholding a murder conviction in *Bowles v. United States*, 439 *F.*2d 536 (D.C.Cir.1970) (en banc), *cert. denied*, 401 *U.S.* 995, 91 *S.Ct.* 1240, 28 *L.Ed.*2d 533 (1971). Bowles claimed that the trial court had erred in refusing to permit him to call as a witness one Smith, who had confessed to Bowles and to two others (who later testified as defense witnesses) that he, Smith, had committed the murder. The trial court had ascertained, out of the presence of the jury, that Smith intended to invoke his privilege. 439 *F.*2d at 541. Like Douglas McGraw, Bowles also argued that the trial court should at least have informed the jury that Smith had asserted the privilege. *Ibid.* After Bowles called Smith to testify, the trial court ruled 1) that Smith could not take the stand to invoke the privilege in the jury's presence; 2) that that ruling did not entitle defendant to a "missing witness instruction," see, *e.g.*, *Clawans, supra,* 38 *N.J.* at 171, 183 *A.*2d 77; and 3) that Bowles was not entitled to an instruction that Smith had invoked the privilege. 439 *F.*2d at 541.

In upholding those rulings, the *Bowles* court first observed that the "well settled" rule against *any* inference from a witness' assertion of the privilege

is grounded in the constitutional notion that guilt may not be inferred from the exercise of the Fifth Amendment privilege but also in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on [its] deliberations. The jury may think it high courtroom drama of probative significance when a witness "takes the Fifth." In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination. [*Id.* at 541–42 (citing *Fletcher v. United States,* 332 *F.*2d 724 (D.C.Cir.1964)).]

The court characterized as an "obvious corollary" to those observations the rule prohibiting the witness from taking the stand merely to invoke the privilege. *Id.* at 542 (citing *Fletcher, supra,* 332 *F.*2d 724). Thus, *Bowles* stands for the proposition that courts should never inform the jury of a witness's invocation of the Fifth Amendment privilege because of the absence of an opportunity for cross-examination and because of the lack of probative value in the assertion of the privilege. *See also United States v. Kerr,* 711 *F.*2d 149 (10th Cir.1983) (upholding trial court's refusal to allow witness to take stand merely to invoke privilege when trial court did not mention possibility of witness testifying); *United States v. Johnson,* 488 *F.*2d 1206 (1st Cir.1973) (same).

Relying on extensive authority with which we agree, *Bowles* prohibits invocation of the privilege in the presence of the jury when the proposed testimony would be cumulative, in some degree, of other admissible evidence. However, courts in New Jersey appear to differ on whether the *Bowles* rationale is inapplicable "when the court *knows* that the witness has evidence which could have some impact on the facts in issue or the innocence of the defendant," *State v. Cito,* 196 *N.J.Super.* 220, 227, 482 *A.*2d 45 (Law Div.1984), *aff'd,* 213 *N.J.Super.* 296, 301, 517 *A.*2d 174 (App.Div.1986), *certif. denied,* 107 *N.J.* 141, 526 *A.*2d 203 (1987), or whether the *Bowles* rationale invariably forecloses an inference from invocation of the privilege regardless of the value to the defendant's case of the proposed

testimony, *State v. Karlein*, 197 *N.J.Super.* 451, 455 & n. 1, 484 *A.*2d 1355 (Law Div.1984).

The former interpretation of *Bowles* originates in a footnote in *State v. Jamison*, 64 *N.J.* 363, 316 *A.*2d 439 (1974), in which we speculated that the policy considerations supporting a rule that would not allow the prosecution to call a witness to the stand solely to invoke the privilege "would [not] seem to apply * * * where the defense desires to call a witness who is expected to decline to testify, asserting his privilege." *Id.* at 373 n. 1, 316 *A.*2d 439. At least one court has interpreted that passage as indicating that a defendant has the right at least to an instruction that his or her witness has asserted the privilege against self-incrimination when the proffered testimony is both exculpatory of the defendant and inculpatory of the proposed witness and is not cumulative. See *Cito, supra*, 213 *N.J.Super.* at 300–01, 517 *A.*2d 174.

In *Karlein, supra*, 197 *N.J.Super.* 451, 484 *A.*2d 1355, the Law Division refused to allow the defendant to call to the stand one Guinta, separately indicted and awaiting trial, for the sole purpose of invoking his Fifth Amendment privilege as an *Evidence Rule* 8 hearing had revealed was the witness's intention. Guinta "clearly had knowledge of the facts relevant to the defendant's trial * * *." *Id.* at 455, 484 *A.*2d 1355. Judge Newman, rejecting the *dictum* in the Law Division's reported opinion in *Cito, supra*, 196 *N.J.Super.* at 227, 482 *A.*2d 45 (the Appellate Division opinion not yet having been reported), that the *Bowles* rationale might not apply in certain circumstances, pointed out that

[i]f the witness were allowed to invoke the privilege against self-incrimination at trial, the jury might infer that it was the witness who was involved in the criminal act, not the defendant. The probative value of this inference, as tending to prove the facts which resulted in the criminal indictment is diminutive, while the possibility of undue prejudice is significant. While in theory the witness who invokes the Fifth Amendment produces no evidence whatsoever, the practical result is that inferences might be drawn which create a substantial danger of undue prejudice to the State and mislead the jury into findings not based on legitimate evidence. Since the probative value of the inferences is

> substantially outweighed by the danger of undue prejudice and of misleading the jury, the evidence is likewise excludable pursuant to *Evid.R.* 4.
>
> [*Id.,* 197 *N.J.Super.* at 457, 484 *A.*2d 1355]

*See also State v. Nunez,* 209 *N.J.Super.* 127, 506 *A.*2d 1295 (App.Div.1986) (approving of *Karlein* ).

We conclude that the trial court correctly denied defendant's request for instructions that would have permitted a favorable inference from Larry's invocation of the Fifth Amendment. *Bowles, supra,* 439 *F.*2d at 542; *State v. Crews,* 208 *N.J.Super.* 224, 230, 505 *A.*2d 198 (App.Div.1986); *see Cito, supra,* 213 *N.J.Super.* at 300–01, 517 *A.*2d 174. To permit Larry to avoid testifying, the court would have to find that the witness had demonstrated a "reasonable ground to apprehend the peril" of incrimination. *Craig, supra,* 107 *N.J.Super.* at 199, 257 *A.*2d 737. As noted *infra* at 78–79, 608 *A.*2d at 1340, once the court permits the witness to invoke the privilege, the fact-finder can draw no inference *against* either party from that witness's failure to testify, *see Crews, supra,* 208 *N.J.Super.* at 230, 505 *A.*2d 198, and thus neither the State nor a defendant can capitalize on the absence of a witness who has invoked the privilege. Moreover, in this case Larry's invocation of the privilege did not support an inference—implicit in instructions regarding a witness's invocation of the Fifth Amendment—that his testimony would have or could have exculpated defendant.

### III

■■ Defendant also contends that the trial court erred in failing explicitly to instruct the jury that it should draw no inference unfavorable to defendant from Larry's non-participation in the trial. We agree that even in the absence of a specific request and of an improper comment in summation, the court ordinarily should administer an instruction foreclosing the drawing of any inference whatsoever. There may of course be circumstances under which a trial court could properly exercise its discretion to omit a "missing witness" instruction even when the foregoing conditions have been met, but we believe those circumstances will be rare indeed. In this case, however, the

trial court's omission was not "clearly capable of producing an unjust result." *R.* 2:10–1.

–A–

In *Clawans, supra,* 38 *N.J.* 162, 183 *A.*2d 77, this Court held that in order for a party to benefit from a favorable inference from an adversary's failure to produce a witness at trial, the court must first find that 1) the witness was available to the party against whom the adverse inference is sought, and 2) the evidence that the witness would have provided would not have been cumulative and would have been helpful. *Id.* at 171, 183 *A.*2d 77. In addition, the party seeking to benefit from such an inference must notify the court of its intention to request a missing-witness instruction. *State v. Irving,* 114 *N.J.* 427, 442, 555 *A.*2d 575 (1989); *see also State v. Wilson,* 128 *N.J.* 233, 244, 607 *A.*2d 1289 (1992) (defining circumstances in which prosecutor may argue that jury should draw adverse inference from defendant's failure to produce witness).

In *Crews, supra,* Judge Baime observed that "[w]hile the question is one of first impression in New Jersey, we have no difficulty in holding that where a witness invokes his Fifth Amendment privilege and refuses to testify, he is unavailable to both parties and no adverse inference can fairly be drawn by virtue of his nonproduction." 208 *N.J.Super.* at 230, 505 *A.*2d 198. Our summary affirmance of the Appellate Division judgment on the basis of that opinion, see *State v. Crews,* 105 *N.J.* 498, 523 *A.*2d 149 (1987), demonstrates our agreement with the proposition that because a witness who properly asserts the privilege against self-incrimination is unavailable under *Clawans,* neither party is entitled to a favorable inference from the witness's failure to testify. However, until today, no reported case from New Jersey had held that in the absence of a request or of some improper comment during the State's summation seeking to capitalize on the witness's failure to testify, courts

must tailor a specific jury instruction to prevent a *Clawans* inference.

We conclude that a witness's unavailability because of assertion of the Fifth Amendment privilege presents a special circumstance meriting such an instruction even though no party requests one and no one has called the jury's attention to the "absent" witness. When a witness has demonstrated, during a hearing pursuant to *Evidence Rule* 8, a sufficient basis for invocation of the privilege, no objection is necessary to bring to the attention of the court the potential for a *Clawans* problem. Because the witness must invoke the privilege in person to be excused from testifying, *Crews, supra,* 208 *N.J.Super.* at 230–31, 505 *A.*2d 198, no question can arise concerning whether the witness exists or is a mere figment of the defendant's self-serving imagination. Similarly, in assessing the propriety of the invocation of the privilege, the court necessarily determines at the *Evidence Rule* 8 hearing that the testimony would inculpate the witness in some degree. In most cases, such testimony will also tend to exculpate the defendant because defendants generally do not call a witness whose proposed testimony does not tend to buttress the defense. Although that fact of life of criminal trials does not warrant an instruction to the jury that favors defendant, it does entitle a defendant to an instruction aimed at foreclosing an unfavorable inference that could counter whatever exculpatory evidence is presented through other witnesses available for cross-examination by the prosecution.

Because Larry's invocation of the Fifth Amendment privilege rendered him an "unavailable" witness in the *Clawans* sense, we conclude that the trial court should have instructed the jury that it could draw no inference regarding Larry's absence from the proceedings, even without a request by one of the parties for such an instruction and in the absence of any improper reference to Larry's absence by the prosecutor in his summation.

–B–

However, because defendant failed to object to the absence of such an instruction, we must find the court's error to have been clearly capable of producing an unjust result before we can reverse defendant's convictions. *R.* 2:10–2; *State v. Macon,* 57 *N.J.* 325, 337, 273 *A.*2d 1 (1971). Defendant's trial counsel's failure to request an instruction gives rise to a presumption that he did not view its absence as prejudicial to his client's case. *See Irving, supra,* 114 *N.J.* at 444, 555 *A.*2d 575 (citing *State v. Johnson,* 31 *N.J.* 489, 511, 158 *A.*2d 11 (1960)). The plethora of cogent strategic reasons supporting such a choice by counsel, see *Bowles, supra,* 439 *F.*2d at 542 n. 6, strengthens that presumption in this case.

Only defendant made any reference to the possibility that Larry would testify, and that reference did not result from coercion by either the State or the court. Although defendant's comment concerning his brother might have caused the jurors to speculate that Larry did not testify because defendant was lying about Larry's role in the stabbing, the jurors might just as easily have concluded that Larry's reluctance grew out of an understandable concern that were he to testify, he would run the risk of putting himself in the very predicament from which his testimony might extract his brother. Brotherly love is not without its limitations. Moreover, Larry's certification contains no evidence that was both corroborative of defendant's version and non-incriminatory of Larry. We thus conclude that in the circumstances before us, the absence of an unsolicited neutralizing instruction was incapable of substantially prejudicing " 'defendant's fundamental right to have the jury fairly evaluate the merits of his defense.' " *Irving, supra,* 114 *N.J.* at 444, 555 *A.*2d 575 (quoting *State v. Thornton,* 38 *N.J.* 380, 396, 185 *A.*2d 9 (1962), *cert. denied,* 374 *U.S.* 816, 83 *S.Ct.* 1710, 10 *L.Ed.*2d 1039 (1963)); *cf. Kerr, supra,* 711 *F.*2d 149 (holding that in not mentioning, in jury's presence, possibility of missing

witness's proposed testimony, court followed proper procedure, defendant having made no request for neutralizing instruction).

–C–

Because defendant failed to raise the issue in either his brief to the Appellate Division or his petition for certification to this Court, we do not reach the question posed in a supplemental brief filed after the petition had been granted, namely, whether the trial court should have *sua sponte* conferred use immunity on Larry. Although we do not rule directly on the question, we think it most unlikely that we would adopt the principle of *Virgin Islands, supra,* 615 *F.*2d at 969–74.

IV

Judgment affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.