**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5162-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YASMEEN ANDERSON,

    Defendant-Appellant.

_____

Submitted May 10, 2017 — Decided September 18, 2017

Before Judges Simonelli and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Somerset County, Indictment No.
14-04-0211.

Joseph E. Krakora, Public Defender, attorney
for appellant (Lon Taylor, Assistant Deputy
Public Defender, of counsel and on the brief).

Michael H. Robertson, Somerset County
Prosecutor, attorney for respondent (Lauren
Martinez, Assistant Prosecutor, of counsel and
on the brief).

The opinion of the court was delivered by GOODEN

BROWN, J.A.D.

Following a jury trial, defendant was convicted of fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d), and acquitted of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). She was sentenced on March 13, 2015, to a one-year probationary term. Defendant now appeals from the memorializing judgment of conviction entered on March 20, 2015. We have considered defendant's arguments in light of our review of the record and applicable legal principles. We affirm, as we conclude that defendant's contentions are without merit.

The following facts were adduced at the trial. At approximately 2:30 p.m. on February 5, 2014, Sergeant Robert Lavin of the Bound Brook Police Department was dispatched to a Fisher Avenue address on a report of a domestic dispute. Upon arrival, Lavin overheard both a male and a female voice "yelling and screaming" inside the residence. After Officer Jan Babula arrived to back-up Lavin, Lavin knocked on the front door of the residence and identified himself and his partner as police officers. About fifteen seconds later, a woman Lavin recognized as defendant from prior domestic disputes partially opened the door. Lavin observed a man known to him as R.C., defendant's live-in boyfriend, seated on the stairwell next to the front door. Defendant continued to

yell at R.C. and refused to open the door entirely despite Lavin's insistence.

In an attempt to defuse the situation, Lavin ordered R.C. to go upstairs. After R.C. complied, defendant opened the door all the way, at which point Lavin and Babula observed defendant holding a knife in her right hand. Lavin described the blade of the knife as approximately seven inches in length. Babula described the knife as having a silver tip. Lavin and Babula immediately drew their service revolvers and Lavin ordered defendant to drop the knife. Initially, defendant refused to comply and spewed profanities while still brandishing the knife. Defendant exclaimed repeatedly "[f]**k this, I'm tired of dealing with this shit . . . . [M]ake me drop the knife." Lavin continuously ordered defendant to calm down and drop the knife. After about two minutes, defendant retreated to the kitchen area of the residence with Lavin and Babula following. Eventually, defendant dropped the knife on the kitchen counter, at which point she was handcuffed, placed under arrest, and the knife was seized.

After defendant was subdued, Lavin and Babula asked R.C. what happened. R.C. responded "[t]he crazy bitch cut me" and rolled up his sleeve to display a small laceration on his forearm area. Both Lavin and Babula believed the laceration was a fresh wound. Lavin "could see the open redness and the moisture on the

3                                                               A-5162-14T2

laceration itself[,]" and Babula observed "no evidence of healing" or "scabbing." At the scene, Babula took photographs of the wound, which were admitted into evidence at the trial.

R.C. testified that on the date in question, defendant went into a jealous rage over other women calling him and demanded he leave her apartment. When he refused, she called the police. According to R.C., when the police arrived, they drew their service weapons and repeatedly ordered defendant to drop the knife. However, R.C. denied seeing defendant with a knife and denied telling the police officer that defendant had cut him. When confronted with the photographs depicting the wound, R.C. testified that it was an old wound he had "picked at" and removed the scab. Further, R.C. testified that he sent a letter to the Prosecutor's Office denying defendant did anything to him.

At the conclusion of the State's case, defendant moved for a judgment of acquittal pursuant to Rule 3:18-1, which the court denied. After the verdict was rendered and defendant was sentenced, defendant filed a notice of appeal. On appeal, defendant raises the following points for our consideration:

> POINT I
>
> [R.C.'s] HEARSAY STATEMENT INDICATING THAT HE
> HAD BEEN CUT BY DEFENDANT WAS NOT AN EXCITED
> UTTERANCE AND SHOULD HAVE BEEN EXCLUDED,
> MANDATING A NEW TRIAL ON THE CHARGE OF
> UNLAWFUL POSSESSION OF A KNIFE.

4

<u>POINT II</u>

THE IMPROPER USE OF "AND/OR" REFERRING TO THREE POSSIBLE VICTIMS IN REGARDS TO ASSESSMENT OF UNLAWFUL POSSESSION OF A KNIFE WAS AMBIGUOUS AND COULD HAVE LED TO A NON-UNANIMOUS VERDICT.

Defendant argues that the trial court erroneously admitted R.C.'s statement to police, "[t]he crazy bitch cut me[,]" as an excited utterance. "Trial court evidentiary determinations are subject to limited appellate scrutiny, as they are reviewed under the abuse of discretion standard." <u>State v. Buda</u>, 195 <u>N.J.</u> 278, 294 (2008). The excited utterance exception to the hearsay rule allows a trial court to admit certain out-of-court statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate." <u>N.J.R.E.</u> 803(c)(2). Such statements "are admissible under the rationale that excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." <u>Buda</u>, <u>supra</u>, 195 <u>N.J.</u> at 293 (quoting <u>State v. Cotto</u>, 182 <u>N.J.</u> 316, 327-28 (2005)).

Various factors bear on the declarant's opportunity to fabricate, including:

> (1) the amount of time that transpired between the initial observation of the event and the subsequent declaration of the statement; (2) the circumstances of the event; (3) the mental or physical condition of the declarant; (4) the shock produced; (5) nature of the statement; and (6) whether the statement was made voluntarily or in response to a question.
>
> [Buda, supra, 195 N.J. at 294 (citation and internal quotations omitted).]

Although each of these factors is important, the crucial issue "is the presence of a continuing state of excitement that contradicts fabrication and provides trustworthiness." Cotto, supra, 182 N.J. at 328 (citation and internal quotations omitted); see also State v. Branch, 182 N.J. 338, 366 (2005) (focusing attention on "the opportunity to fabricate or deliberate" elements of N.J.R.E. 803(c)(2) in conducting the requisite analysis). Thus, in this fact-sensitive analysis, a court must determine "whether the facts and circumstances reasonably warrant the inference that declarant was still under the stress of excitement caused by the event." State v. Baluch, 341 N.J. Super. 141, 182 (App.Div.2001).

Here, there is no doubt defendant's actions were upsetting and alarming to R.C., and that the circumstances were shocking and disturbing. R.C. watched as defendant brandished a knife during a two-minute stand-off with police while their guns were drawn. The victim's statement was made under the stress and excitement of these highly charged circumstances. We find that the record

adequately supports the trial court's decision, and therefore discern no abuse of discretion.

Next, defendant argues for the first time on appeal that the court erroneously included "the 'and/or' language referring to three separate victims as providing three separate variants of unlawful possession of a weapon" in charging the jury on the third element of the offense. According to defendant, the erroneous charge "deprived [defendant] due process of law and a fair trial under both the United States and New Jersey Constitutions" and "allowed for a non-unanimous verdict."

When a defendant fails to object to a jury charge at trial, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error, in the context of a jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

Of course, in reviewing any claim of error relating to a jury charge, "[t]he charge must be read as a whole in determining whether there was any error[,]" State v. Torres, 183 N.J. 554, 564 (2005), and the effect of any error must be considered "in light of the overall strength of the State's case." State v. Walker, 203 N.J. 73, 90 (2010) (citation omitted). However, a defendant's attorney's failure to object to jury instructions not only "gives rise to a presumption that he did not view [the charge] as prejudicial to his client's case[,]" State v. McGraw, 129 N.J. 68, 80 (1992), but is also "considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013).

Undoubtedly, appropriate and proper jury charges are essential to a fair trial. State v. Savage, 172 N.J. 374, 387 (2002). However, we reject defendant's contention that the use of the phrase "and/or" in the court's jury instructions led to the type of confusion we found in State v. Gonzalez, 444 N.J. Super. 62, 75-76 (App. Div.), certif. denied, 226 N.J. 209 (2016). There, we determined that a jury charge repeatedly employing the phrase "and/or" rendered it impossible to determine whether the jury unanimously agreed the defendant was guilty as an accomplice or co-conspirator in a robbery or an aggravated assault, or both. Ibid. In finding plain error, we concluded

> [t]he instructions were inherently ambiguous
> because the judge failed to explain in clear
> English what the jurors were required to
> decide and, as a result, generated numerous
> ways in which the jury could have convicted
> without a shared vision of what defendant did,
> or convicted defendant on some charges without
> finding all the elements were proven beyond a
> reasonable doubt.
>
> [Id. at 77 (citing State v. Gentry, 183 N.J.
> 30, 32 (2005)).]

In its denial of certification, the Supreme Court expressly limited our holding "to the circumstances in which it was used in th[at] case." Gonzalez, supra, 226 N.J. at 209.

Here, the judge's minimal use of that term did not equate to the nineteen times the trial judge used it in Gonzalez. Further, the judge essentially tracked the Model Jury Charge. See Model Jury Charge (Criminal), "Unlawful Possession of a Weapon (N.J.S.A. 2C:39-5(d))" (Apr. 18, 2005). The jury was instructed as follows:

> Now, the third element that the State
> must prove beyond a reasonable doubt is that
> the [d]efendant possessed [the knife], under
> circumstances not manifestly appropriate for
> such . . . lawful uses as it may have. It is
> not necessary for the State to prove that the
> [d]efendant formed an intent to use [the
> knife] as a weapon. It is, however, necessary
> for the State to prove that it was possessed
> under such circumstances that a reasonable
> person would recognize that it was likely to
> be used as a weapon.
>
> In other words, under circumstances where
> it posed an immediate threat to . . . [R.C.],

and/or Officer Babula, and/or Sergeant Robert Lavin.

The commission of the crime did not depend upon the identification of a particular victim. Rather, defendant could be found guilty if she possessed the knife under circumstances that posed a threat to any one of the three victims. Indeed, "[i]n determining whether the use of a weapon is manifestly appropriate or inappropriate under the circumstances, a jury must look to the facts of the case and not to the subjective intent of the actor." State v. Montalvo, 229 N.J. 300, 317 (2017). Moreover, given the facts of this case and the testimony at trial, the judge's use of "and/or" in the context of the entire charge did not lead to an "ultimate determination of guilt or innocence . . . based on speculation, misunderstanding, or confusion." State v. Olivio, 123 N.J. 550, 568 (1991). Accordingly, we find no error, let alone plain error, in the jury instruction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5162-14T2