**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4790-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAQUAN O'NEAL, a/k/a JAQUAN
WALLACE,

    Defendant-Appellant.

_____

Submitted December 10, 2018 – Decided  February 4, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 14-02-0242, 16-09-1162, and 16-12-0786.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Charles C. Cho, Assistant Prosecutor, on the brief).

PER CURIAM

A jury convicted defendant Jaquan O'Neal of third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d). He was sentenced to an aggregate seven-year term of imprisonment with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).[1] Defendant claims he was deprived of a fair trial by the trial court's response to the jury's request for a playback of audio-recorded testimony, an erroneous evidentiary ruling, and failure to tailor the identification jury instruction to the facts of his case. Alternatively, defendant contends the weapons offenses should have merged at sentencing. Based on our review of the evidence in light of the applicable law, we affirm defendant's convictions and remand for merger of the weapons offenses.

I.

Defendant was arrested in Jersey City in the early morning hours of September 7, 2013. The facts pertinent to this appeal were adduced at trial

_____

[1] Concurrent terms of imprisonment were also imposed on two unrelated convictions pursuant to post-verdict plea arrangements, and defendant was sentenced to time served for an unrelated disorderly persons wandering offense, N.J.S.A. 2C:33-2.1. None of these convictions is the subject of the present appeal.

A-4790-16T2

through the State's primary witness, Sergeant Keith Ludwig, a twenty-year veteran of the Jersey City Police Department (JCPD). Assigned to the street crime unit, Ludwig and approximately twenty other officers from that unit responded to an apartment complex upon receipt of unspecified complaints by management of the complex. When Ludwig and his partner entered the complex, Ludwig observed a vehicle parked illegally on the sidewalk. The right passenger door of the vehicle was open. Approximately ten to twelve people were within fifteen to twenty feet of the car. Simultaneously, Ludwig heard a radio transmission describing an individual that other members of his unit were pursuing in the complex.

Based on the radio transmission, Ludwig "sped up [his] approach into the complex[,]" identified himself as a police officer, and ordered the group of individuals to stop. Ludwig testified:

> And . . . as I got closer, [defendant] separated himself from the group and I observed him immediately go over to that parked vehicle that had the right rear passenger door open. [Defendant] reached into his right waistband with his right hand and threw a silver and black handgun in through the open door.
>
> I immediately drew my service weapon on him, told him[, "S]top, police, get away from the vehicle.["] Defendant] ignored my commands. He went into his left pocket with his left hand and threw several small

objects -- . . . I could not decipher what they were at the time, into that open vehicle.

I kept ordering him to get away from the vehicle, ["S]top, stop, stop,["] with my gun pointed at him. [Defendant] refused my commands and he made sure he got back into that group he came from.

. . . .

Within seconds to minutes, there w[ere fifty] to [one hundred] people that came out of the complex, came out of everywhere, and they were just surrounding us in this courtyard area.

Because the weapon was not immediately recovered, and the officers were "severely out[]numbered[,]" a "city-wide assist" was requested. Accordingly, all on-duty Jersey City officers responded to the complex and controlled the crowd. After placing defendant under arrest, without incident, Ludwig recovered a handgun, a bundle of heroin, and a bag of marijuana from the rear seat of the vehicle.

Ludwig did not author any reports pertaining to the incident. Instead, an investigation report was prepared by Officer Vincent Alberto based on Ludwig's account. During cross-examination, defense counsel questioned Ludwig about an apparent inconsistency in a use-of-force report, which he did not author nor approve as a supervisor. In particular, the report indicated force was used to subdue defendant. Ludwig stated that the reference to defendant in that report

4

was a mistake, and should have identified another person at the scene against whom force was used.

Over defense counsel's objection, on redirect examination, the trial court permitted the State to question Ludwig about statements contained in Alberto's report, which were consistent with Ludwig's testimony. In doing so, the court determined defense counsel's inquiry about the use-of-force report had "attacked" Ludwig's credibility and, as such, the State was not seeking to bolster Ludwig's testimony. The State then asked Ludwig to "summarize . . . some of the relevant or important information that you [told Alberto that he] placed in the investigation report." In response, Ludwig testified:

> I relayed to Officer Alberto my exact observations, where I came into the complex from . . . the Bright Street side, who I was with, the clothing description of [defendant], exactly what I saw. I described what I saw, [defendant]'s actions, you know, which way he went, the fact that he ignored my commands, that he separated himself from the group, went back to the group. Everything that I felt was important to put in the report to refresh my recollection for trial.

Toward the end of the first day of deliberations, the jurors sent a note to the trial court, requesting to "see a copy of the police report." The court instructed the jurors, in open court, that because the report was not admitted in evidence, the report could not be provided to them. Immediately thereafter, a

5

juror asked a question, prompting the court to reply that the jury could request a playback of testimony. Either the same juror or another, responded: "We also need like the first three paragraph[s] as . . . the officer entered the premises. I [woul]d like to know what happened with that first - - [.]"

The trial court interrupted the juror, instructing the jury to clarify their request in writing, presumably when they returned to the jury room. While the jurors remained in the courtroom, defense counsel asked whether they should "write specifically the testimony that they wanted to hear?" In response, the court instructed the jury, as follows:

> [I]f you know what part of the testimony of any of the witnesses you want to hear, then you let me know that. Or if you want to hear it all the way through, or if there [i]s a part where you hear it and you [a]re finished, you can maybe raise your hand and do it that way.

Immediately thereafter, one or more jurors requested to "hear" the police report. The judge responded that the jurors could hear testimony about the report, and instructed them to return to the jury room and send out a written note indicating how they wished to proceed; whether they had any other questions; and whether they wished to adjourn at 4:30 p.m. or 5:00 p.m., or resume deliberations the following day. The jurors, in turn, submitted a note to the court indicating they wanted to hear Ludwig's entire testimony, but elected to retire

A-4790-16T2

for the evening. The court informed the jury, in open court, that the playback would take approximately two hours and fifteen minutes, and they could hear the entire testimony or stop the playback when they heard sufficient testimony by raising their hands.

The following day, before replaying Ludwig's testimony, a juror inquired in open court, "We can stop if someone raises [his or her] hand, we can do it with a quick vote, we can stop this, right, if we [ha]ve heard enough?" Although the court indicated it would permit the jurors to stop the testimony, it further indicated its intention to also play back Ludwig's testimony on cross-examination.

After hearing most of Ludwig's direct testimony, a juror stated that playback could be stopped. When the court indicated it would then begin playback of Ludwig's cross-examination, a juror asked whether they "ha[d] to listen to the cross" and another juror stated, "We [a]re done with the testimony." The record also indicates one or more jurors motioned to the court that there was no need to hear additional testimony.

During the court-initiated sidebar conference that followed, the court expressed its intention to excuse the jurors to continue their deliberations because, "They [a]re pretty adamant about it. They do n[o]t want to hear cross

[-]examination even though [the court] asked a couple of times." The State added, "I would just note for the record . . . [that] the jurors . . . were all conferring with one another. It did n[o]t seem like there was one dissenter in the bunch regarding the decision to just end it with direct [examination]." Over defense counsel's objection, the court advised the jurors to resume deliberations without replaying Ludwig's cross-examination.

Following the jury's guilty verdict, the trial court sentenced defendant to a three-year term of imprisonment for the third-degree possession of heroin conviction; a concurrent seven-year term of imprisonment, with forty-two months of parole ineligibility pursuant to the Graves Act, for the second-degree unlawful possession of a weapon conviction; and a concurrent eighteen-month term for the fourth-degree possession of a defaced weapon conviction, without a term of parole ineligibility. During the sentencing hearing, defense counsel argued that the weapons convictions should merge, but the State objected.[2] Although the court acknowledged the argument, it did not rule on defendant's application. This appeal followed.

On appeal, defendant raises the following points for our consideration:

---

[2] The attorney who represented defendant at sentencing did not represent him at trial.

A-4790-16T2

POINT I

WHEN THE JURY REQUESTED A PLAYBACK OF THE STATE'S PRIMARY WITNESS, THE REPLAY OF ONLY HIS DIRECT TESTIMONY DENIED DEFENDANT A FAIR TRIAL. ADDITIONALLY, THE FAILURE TO CHARGE THE JURY WITH THE PLAYBACK INSTRUCTION REQUIRED BY STATE V. MILLER, 205 N.J. 109 (2011), WAS HARMFUL ERROR. U.S. CONST. AMEND. XIV; N.J. CONST. ART., I ¶ 1.

POINT II

AFTER DEFENSE COUNSEL CROSS-EXAMINED THE STATE'S PRIMARY WITNESS WITH HIS PRIOR INCONSISTENT STATEMENTS, IT WAS IMPROPER FOR THE STATE TO INTRODUCE ON RE-DIRECT UNRE`LATED, INADMISSIBLE PRIOR CONSISTENT STATEMENTS IN ORDER TO BOLSTER THE WITNESS'S CREDIBILITY. THIS IMPROPER BOLSTERING OF THE STATE'S PRIMARY WITNESS DENIED DEFENDANT A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. ART., I ¶ 1.

POINT III

THE TRIAL COURT'S FAILURE TO TAILOR THE IDENTIFICATION CHARGE TO THE CIRCUMSTANCES OF THE CASE DENIED DEFENDANT A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. ART., ¶¶ 1, 10
(Not Raised Below).

9

POINT IV

THE WEAPONS OFFENSES [CHARGED IN THE SAME] INDICTMENT . . . SHOULD HAVE MERGED. U.S. CONST. AMEND. VIII, XIV; N.J. CONST. ART. I, ¶¶ 1, 12.

II.

A.

Initially, we address defendant's argument that he was denied his right to a fair trial because the trial court failed to replay Ludwig's cross-examination testimony. In particular, defendant contends the error was not harmless because disputed facts supporting his defense of misidentification were elicited by his counsel's inquiry during cross-examination. Defendant further claims that after his testimony was replayed, the trial court failed to sua sponte issue a limiting instruction pursuant to State v. Miller, 205 N.J. 109 (2011).

It is well-settled that the decision whether to read or play back recorded testimony to the jury is one that lies within the discretion of the trial judge. Id. at 122; State v. Wilson, 165 N.J. 657, 660 (2000). "However, that broad grant of discretion is not unbridled." Wilson, 165 N.J. at 660.

In Miller, during deliberations, the jury asked the court to replay a videotape of the trial testimony of one of the victims. 205 N.J. at 114. The trial court allowed the victim's direct and cross-examination to be replayed in open

court.  Ibid.  The Court held that, when faced with such a request, the trial court should ordinarily grant the jury's request, allow both direct and cross-examination to be replayed, and play the video recording in open court.  Id. at 122-23.

Nonetheless, the Court reiterated its earlier pronouncement that "[j]urors should not be required to watch or hear more testimony than they ask for."  Id. at 123 (citing Wilson, 165 N.J. at 661).  In Wilson, the Court elaborated:

> [W]here a request is clearly circumscribed, the trial court has no obligation to compel jurors to hear testimony they have not asked for or to continue a readback after they have expressly indicated that they have heard enough.  That is so even if one of the parties registers a request for a further readback.
>
> [165 N.J. at 661 (citation omitted).]

Here, the trial court did not improperly discourage the jurors from pursuing a readback of Ludwig's cross-examination testimony, or coerce them to reach a verdict they might not otherwise have reached.  Indeed, immediately after the court initially informed the jurors they could hear Ludwig's entire testimony replayed, defense counsel interjected and requested that the court inquire whether the jurors wanted to hear any specific testimony replayed. Thus, there was no error in the court's so inquiring.  See id. at 661-62.  Moreover, after direct examination was replayed, the jurors adamantly repeated they had heard

11

enough testimony even though the court repeatedly inquired whether they wished to hear cross-examination. We therefore discern no abuse of discretion in the court's decision.[3]

Regarding the court's failure to issue a limiting instruction after Ludwig's testimony was replayed, we are guided by the Court's guidelines set forth in Miller that "[j]udges should take precautions to prevent juries from placing undue emphasis on the particular testimony that is replayed." 205 N.J. at 123. "To that end, at the time the testimony is repeated, judges should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back." (Miller instruction) Ibid.

Although the Court in Miller appeared to limit its guidelines to "the playback of video-recorded witness testimony[,]" id. at 114 (emphasis added), a

---

[3] However, we take this opportunity to remind trial courts to instruct jurors to respond to the courts' inquiries in writing, after the jurors have returned to the jury room and privately conferred with one another. See Model Jury Charges (Criminal), "Criminal Final Charge, Part 4 (Deliberations to Jury Questions)" (rev. Jan. 14, 2013):

> If, during your deliberations, you have a question or feel that you need further assistance or instructions from me, or wish to have certain testimony read or played back (or video or audio exhibit played back), write your question or request on a sheet of paper and give it to the sheriff's officer who will be standing at the jury room door who, in turn, will give it to me.

model instruction for the playback of "<u>recorded</u> testimony" was approved shortly after <u>Miller</u> was decided. <u>Model Jury Charges (Criminal)</u>, "Playback of Testimony" (approved Apr. 16, 2012) (emphasis added) (incorporating the <u>Miller</u> instruction).

Here, however, defendant did not request a <u>Miller</u> instruction. When a defendant fails to object to an error regarding a jury charge, we review for plain error. <u>State v. Funderburg</u>, 225 N.J. 66, 79 (2016). "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" <u>Ibid.</u> (quoting <u>R.</u> 2:10-2).

Nonetheless, in its final jury charge, the trial court instructed the jurors to give "full and impartial consideration to all of the evidence[,]" to "consider all evidence presented at trial[,]" and to base their determination "on all of the evidence presented during the trial." <u>See</u> <u>Miller</u>, 205 N.J. at 126. "We presume that the jury faithfully followed that instruction." <u>Ibid.</u> Having reviewed the record, we conclude the trial court's failure to provide the jury with a <u>Miller</u> instruction at the time Ludwig's testimony was replayed did not constitute any error.

B.

We next address defendant's contention that the trial court erred in permitting the State to "bolster" Ludwig's testimony on redirect examination with prior consistent statements. See N.J.R.E. 607 and 803(a)(2). We afford substantial deference to trial judges when evaluating their evidentiary determinations. State v. Cole, 229 N.J. 430, 449 (2017); State v. Kuropchak, 221 N.J. 368, 385 (2015). Absent a clear error in judgment, we typically uphold a trial judge's evidentiary rulings. State v. J.A.C., 210 N.J. 281, 295 (2015).

Pursuant to N.J.R.E. 607, "A prior consistent statement shall not be admitted to support the credibility of a witness except to rebut an express or implied charge against the witness of recent fabrication or of improper influence or motive and except as otherwise provided by the law of evidence." A prior consistent statement is an exception to the hearsay rule pursuant to N.J.R.E. 803(a)(2). Consistent statements are also subject to a balancing test under N.J.R.E. 403. State v. Darby, 174 N.J. 509, 520 (2002). However, "An attack on a party's credibility through prior inconsistent statements does not necessarily give [the party] the right to use a prior consistent statement to buttress the party's credibility." Palmisano v. Pear, 306 N.J. Super. 395, 403 (App. Div. 1997). There must be some showing that the testimony was a recent fabrication. Ibid.

A-4790-16T2

We have long recognized, "A 'charge' of recent fabrication can be effected through implication by the cross-examiner . . . ." State v. Johnson, 235 N.J. Super. 547, 555 (1989) (finding prior consistent statements were admissible where "defense counsel highlighted several inconsistencies in details between the prior statement and [the witness'] trial testimony"); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 607 (2018) ("Usually, such an allegation is made by the cross-examiner through implication rather than by a direct accusation of a witness."). As we have explained,

> [I]t is the impression the cross-examiner makes upon the jury in the heat of the trial rather than what an appellate court would discern from a coldly analytical study of the testimony which must control review of the somewhat discretionary exercise of judgment made by the trial judge in the matter.
>
> [State v. Moorer, 448 N.J. Super. 94, 109 (App. Div. 2016) (quoting Johnson, 235 N.J. Super. at 555-56).]

Defendant acknowledges "there was a specific attack [by defense counsel] about the incons[is]tancies between the police report and Ludwig's testimony on the use of force against defendant." However, he claims the court impermissibly permitted the State to bolster Ludwig's credibility by asking the officer to summarize the "relevant or important information" in Alberto's report. See

Palmisano, 306 N.J. Super. at 403. In the alternative, defendant argues Ludwig's prior consistent statements, if any, should have been limited to use of force.

While arguably the State's question was overly broad, Ludwig limited his response to two sentences, generally summarizing the type of information he relayed to Alberto that Ludwig "felt was important to put in the report to refresh [his] recollection for trial." Further, the trial court afforded defense counsel wide latitude in questioning Ludwig about a mistake in use-of-force reports he had not authored nor seen prior to trial. See N.J.R.E. 611(b). Arguably, defense counsel "opened the door" to the introduction of consistent statements Ludwig made to Alberto that were memorialized in Alberto's incident report. See State v. James, 144 N.J. 538, 554 (1996) ("The doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence."). The doctrine also "provides an adverse party the opportunity to place evidence into its proper context." Alves v. Rosenberg, 400 N.J. Super. 553, 564 (App. Div. 2008).

Given defense counsel's direct attack on Ludwig's credibility through a mistake in a use-of-force report that Ludwig did not author nor approve, we discern no error in permitting Ludwig to summarize the statements he made to Alberto which were memorialized in Alberto's incident report. Even if it were

16

error to permit Ludwig's consistent statements on redirect examination, based on our review of the record, we conclude any error was harmless, and not clearly capable of producing an unjust result. R. 2:10-2; State v. R.B., 183 N.J. 308, 328 (2005).

C.

We next address defendant's argument, raised for the first time on appeal, that the jury instruction on identification was improper. He contends the trial court failed to properly tailor the instruction pursuant to the factors set forth in State v. Henderson, 208 N.J. 208, 288-93 (2011) because the instruction omitted specific references to Ludwig's level of stress and weapon focus. See Model Jury Charges (Criminal), "Identification: Out-of-Court Identification Only" (rev. July. 19, 2012) (listing stress and weapon focus as two estimator variables the jury may consider in determining a witness's opportunity to view the defendant and the witness's degree of attention).

When a defendant fails to object to a jury charge at trial, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Funderburg, 225 N.J. at 79 (quoting R. 2:10-2). Plain error, in the context of a jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the

17

defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

Of course, in reviewing any claim of error relating to a jury charge, "[t]he charge must be read as a whole in determining whether there was any error[,]" State v. Torres, 183 N.J. 554, 564 (2005), and the effect of any error must be considered "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). However, defense counsel's failure to object to jury instructions not only "gives rise to a presumption that he did not view [the charge] as prejudicial to his client's case[,]" State v. McGraw, 129 N.J. 68, 80 (1992), but also is "considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013).

Defendant's newly-minted argument is belied by the record. Neither the Model Jury Charge nor Henderson, on which it is based, require the trial court to cite examples in the trial testimony. Moreover, the record is devoid of any evidence that Ludwig's identification of defendant was "impermissibly suggestive." Henderson, 208 N.J. at 238. Indeed, defendant was apprehended

at the scene and Ludwig never lost sight of him. See also State v. Pressley, 232 N.J. 587, 591 (2018) (quoting Henderson, 208 N.J. at 238) (considering, without deciding, whether "identifications by law enforcement officers should be examined to determine if an 'impermissibly suggestive' identification procedure was used and to assess whether a defendant has proven 'a very substantial likelihood of irreparable misidentification.'"). We conclude the trial court's instruction on identification was appropriate.

D.

Finally, we next consider defendant's contention that the court should have merged the weapons convictions at sentencing. "At its core, merger's substantial purpose 'is to avoid double punishment for a single wrongdoing.'" State v. Romero, 191 N.J. 59, 80 (2007) (quoting State v. Diaz, 144 N.J. 628, 637 (1996)); see also State v. Miller, 108 N.J. 112, 116 (1987) (merger stems from the well-established principle that an accused who has committed only one offense "cannot be punished as if for two"). "[M]erger implicates a defendant's substantive constitutional rights." State v. Cole, 120 N.J. 321, 326 (1990).

In deciding whether to merge convictions, the court must first ascertain "whether the legislature has in fact undertaken to create separate offenses; and, if so, it must then be determined whether those separate offenses have been

established under the proofs." State v. Valentine, 69 N.J. 205, 209 (1976); see also State v. Allison, 208 N.J. Super. 9, 22-23 (App. Div. 1985). We must "focus on the elements of the crime, the Legislature's intent in enacting the statutes, and the specific facts of each case." State v. Dillihay, 127 N.J. 42, 47 (1992); see also State v. Bull, 268 N.J. Super. 504, 513 (App. Div. 1993). We also consider "the time and place of each purported violation." State v. Davis, 68 N.J. 69, 81 (1975). Where the offenses are in fact indistinguishable, the resulting convictions must be merged. State v. Best, 70 N.J. 56, 61 (1976).

Further, N.J.S.A. 2C:1-8 provides for merger of offenses to avoid impermissible multiple convictions for the same conduct and sets forth a series of factors to guide a court in determining whether to bar multiple convictions for conduct that constitutes more than one offense. In particular, N.J.S.A. 2C:1-8(a)(1) provides that a defendant may not be convicted of multiple offenses if "[o]ne offense is included in the other." An offense is included in the other when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the [other] offense." N.J.S.A. 2C:1-8(d)(1); see also State v. Mirault, 92 N.J. 492, 502-03 (1983).

Applying these principles to the facts of this particular case, both of the weapons offenses prohibit possession of the same firearm under certain

conditions. In particular, defendant unlawfully possessed the handgun without a permit, in violation of N.J.S.A. 2C:39-5(b), and that same handgun was defaced, in violation of N.J.S.A. 2C:39-3(d). Further, the convictions stem from a single incident. See Davis, 68 N.J. at 81. Neither statute contains an anti-merger provision. Compare, e.g., N.J.S.A. 2C:35-7 (distributing a controlled dangerous substance within 1000 feet of school property) with N.J.S.A. 2C:35-6 (employing a juvenile in a drug distribution scheme). We are therefore convinced the two weapons convictions should merge for sentencing purposes.

Accordingly defendant's sentence on the defaced weapon conviction is vacated and remanded to the trial court for merger with the unlawful possession of a weapon conviction. The judgment of conviction shall be amended to reflect merger of those convictions, and grading of the original defaced weapon charge as fourth-degree.[4]

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e) (2).

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

---

[4] Although at sentencing, counsel and the court agreed possession of a defaced weapon is a fourth-degree offense, the judgment of conviction inaccurately reflects the grade for that offense as second-degree.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION